786 A.2d 923

**COMMONWEALTH OF PENNSYLVANIA, Appellee,**

v.

**Delores RIVERS, Appellant.**

Supreme Court of Pennsylvania.

Submitted Feb. 4, 2000

Decided Dec. 20, 2001.

242

Daniel Silverman, Philadelphia, for Delores Rivers.

Catherine Marshall, for Commonwealth.

William G. Young, Philadelphia, Robert A. Graci,Harrisburg, for Office of Attorney General.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

FLAHERTY, Chief Justice.

This is a direct appeal from the denial of a PCRA petition in a death penalty case. Rivers was convicted of first degree murder on March 15, 1989. The next day, the jury determined that there were two aggravating circumstances and no mitigating circumstances and fixed the penalty at death. This court affirmed the judgment of sentence at *Commonwealth v. Rivers*, 537 Pa. 394, 644 A.2d 710 (1994), and the United States Supreme Court denied certiorari on March 18, 1996. *Rivers v. Pennsylvania*, 516 U.S. 1175, 116 S.Ct. 1270, 134 L.Ed.2d 217 (1996). Rivers filed a PCRA petition on December 21, 1996 pursuant to the Post Conviction Relief Act, 42 Pa.C.S. § 9541 *et seq.* (effective January 16, 1996), and on September 9, 1998 the PCRA court dismissed the PCRA petition. This appeal followed.

To be eligible for relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence:

(1) That the petitioner has been convicted of a crime under the laws of this Commonwealth and is at the time relief is granted:

(i) currently serving a sentence of imprisonment, probation or parole for the crime;

(ii) awaiting execution of a sentence of death for the crime; or

(iii) serving a sentence which must expire before the person may commence serving the disputed sentence.

(2) That the conviction or sentence resulted from one or more of the following:

(i) A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(ii) Ineffective assistance of counsel which in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(iii) A plea of guilt unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent.

(iv) The improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.

(v) Deleted.

(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.

(vii) The imposition of a sentence greater than the lawful maximum.

(viii) A proceeding in a tribunal without jurisdiction.

(3) That the allegation of error has not been previously litigated or waived.

(4) That the failure to litigate the issue prior to or during trial, during unitary review or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel.

42 Pa.C.S. § 9543(a)(1)-(4). In her appeal, Rivers raises twenty-two issues. Nine of these issues concern allegations of error at the guilt phase; ten issues concern allegations of error at the penalty phase; one issue concerns the allegation

that the PCRA court is biased; one issue concerns allegedly newly discovered evidence and the final claim is that the errors cumulatively require relief.

Fearing that she has not met the requirements of the PCRA to preserve her guilt phase claims, Rivers states:

> The claims for relief discussed in this brief were all presented in the PCRA proceedings below. This is appellant's first and only PCRA proceeding. This Court has always reviewed, on their merits, the claims raised by capital PCRA petitioners who were in a posture similar to that here.
>
> All of appellant's claims are eligible for relief under the PCRA. With respect to each claim, appellant asserted below and in this Court that her conviction and/or sentence resulted from ineffective assistance of counsel and violations of the Constitutions of this Commonwealth and of the United States that undermined the truth-determining process. Furthermore, to the extent that the concept of waiver can properly be applied to this capital case, any waiver is overcome by appellant's allegations that prior counsel was ineffective to the extent that he failed to properly preserve, raise and litigate the claims presented herein.

Brief at 13–14.

Rivers' reliance on this court's unwillingness to apply ordinary principles of waiver to this case because it is a capital case is misplaced. As we stated in *Commonwealth v. Albrecht,* "Henceforth, a PCRA petitioner's waiver will only be excused upon a demonstration of ineffectiveness of counsel in waiving the issue." 554 Pa. 31, 720 A.2d 693, 700 (1998).

Also misplaced is Rivers' belief that because she has "asserted below and in this Court" the ineffectiveness of counsel, violations of the constitution, and that such violations undermined the truth determining process, her guilt phase claims are not waived.

A cursory reading of the PCRA reveals that PCRA petitioners, to be eligible for relief, must, inter alia, plead and prove their assertions by a preponderance of the evidence.

Section 9543(a). Inherent in this pleading and proof require-
ment is that the petitioner must not only state what his issues
are, but also he must demonstrate in his pleadings and briefs
how the issues will be proved. Moreover, allegations of
constitutional violation or of ineffectiveness of counsel must be
discussed "in the circumstances of the case." Section
9543(a)(2)(i-ii). Additionally, the petitioner must establish by
a preponderance of evidence that because of the alleged
constitutional violation or ineffectiveness, "no reliable adjudi-
cation of guilt or innocence could have taken place." Section
9543(a)(2)(i-ii). Finally, petitioner must plead and prove that
the issue has not been waived or finally litigated, § 9543(a)(3),
and if the issue has not been litigated earlier, the petitioner
must plead and prove that the failure to litigate "could not
have been the result of any rational, strategic or tactical
decision by counsel." Section 9543(a)(4).

■ Moreover, because each of Rivers' claims is couched in
terms of ineffectiveness of counsel, she must also prove, by a
preponderance of the evidence, the following:

(1) that there is merit to the underlying claim; (2) that
counsel had no reasonable basis for his or her course of
conduct; and (3) that there is a reasonable probability that,
but for the act or omission challenged, the outcome of the
proceeding would have been different. *Commonwealth v.
Jones,* 546 Pa. 161, 175, 683 A.2d 1181, 1188 (1996). Coun-
sel is presumed to be effective and Appellant has the burden
of proving otherwise. *Commonwealth v. Marshall,* 534 Pa.
488, 633 A.2d 1100 (1993). Additionally, counsel cannot be
considered ineffective for failing to raise a claim that is
without merit. *Commonwealth v. Peterkin,* 538 Pa. 455, 649
A.2d 121 (1994)....

*Commonwealth v. Holloway,* 559 Pa. 258, 739 A.2d 1039, 1044
(1999).

■ Although all of Rivers' guilt phase claims are couched
in the boilerplate language that there has been constitutional
error and "to the extent that [counsel] failed to properly
preserve, raise and litigate this claim, prior counsel was

ineffective and such ineffective assistance of counsel under-
mines confidence in the outcome of the proceeding," for no
guilt-phase claim does Rivers offer proof that in the circum-
stances of the case, no reliable adjudication of guilt or inno-
cence could have taken place; and nowhere does she present
the three-part ineffectiveness analysis set out above, and in no
case does Rivers establish that her claims are not waived,
§ 9543(a)(3), or that the failure to litigate an issue earlier
"could not have been the result of any rational, strategic or
tactical decision by counsel," Section 9543(a)(4).[1]

Discussion of the circumstances of the case in claims of
ineffectiveness of counsel is a particularly important require-
ment of the PCRA. Circumstances include not only the totality
of the evidence that was introduced at trial, but may include
also facts concerning the prosecution of the case and the
appellant's interactions with her lawyer. Nowhere does Riv-
ers discuss her ineffectiveness claims in the circumstances of
the evidence at trial.[2] This is crucial, for courts need to be

1. Rivers' guilt-phase claims are that (1) the trial court erred in failing
the life-qualify the jury (2) the trial court improperly death qualified the
jury; (3) the Commonwealth exercised peremptory challenges that were
racially discriminatory; (4) trial counsel was ineffective in failing to
request cautionary instructions concerning evidence of the appellant's
other crimes and bad acts; (5) the trial court erred in preventing the
defense from impeaching a Commonwealth witness; (6) the court erred
in instructing the jury concerning prior convictions of Commonwealth
witnesses; (7) trial counsel was ineffective in failing to request caution-
ary instructions with respect to inflammatory photographs of the de-
ceased; (8) the trial court erred in failing to record the guilt and
penalty phase charge conferences; (9) trial counsel was ineffective in
failing to present the defense that the victim was killed by multiple
perpetrators under circumstances which cast doubt on appellant's
participation.

2. Evidence introduced at trial, in part, is that Rivers was employed as
the nurse caretaker of the victim, a 74-year-old amputee who kept
several thousand dollars in cash in her home. On the night of the
murder, Rivers was smoking cocaine at the house of a friend located
approximately two blocks from the victim's house. That evening Rivers
ran out of money to buy cocaine and left the home of her friend about
7:30 or 8:00 p.m. A neighbor was with the victim until 9:00 p.m. Rivers
returned to the crack house about 10:30 or 11:00 p.m. that evening with
a large number of fifty dollar bills stuffed in her shirt. Rivers offered to
pay two of the people present to say that she had been at the crack
house all day and night. Rivers also told a woman at the crack house

told why, when considering the totality of the case, the petitioner believes the claims she is making establish that the trial court could not have reliably adjudicated her guilt or innocence.

Consider, for example, Rivers' claim that the trial court erred and counsel was ineffective in not preserving the issue that certain members of the venire were improperly disqualified. As stated above, in all PCRA claims of ineffectiveness of counsel or that the law or constitution was violated, the appellant is required to plead and prove by a preponderance of evidence that in the circumstances of her case, the court could not have reliably adjudicated guilt or innocence. The circumstances in each case include the totality of the evidence established at trial with respect to the appellant's guilt. The facts established at trial are that appellant was smoking cocaine on the night of the murder two blocks from the victim's house, ran out of money to buy cocaine, left the crack house and reappeared a short time later spattered with blood, in the possession of a large knife, her shirt stuffed with fifty dollar bills, claiming that she had stabbed and robbed someone and asking for persons present to testify that she had been there all day and night, when the victim, an invalid in the care of appellant, had been stabbed and robbed during this period of time and no other persons were stabbed and robbed in this

that the money came from beating and stabbing someone, and she asked this woman to dispose of a knife for her. A witness at the crack house testified that she saw blood stains on Rivers' white pants and yellow jacket and that Rivers became hysterical about the blood and asked for help wiping it off.. The Commonwealth established that for the geographic area near the crack house and the victim, there were no reported beatings or stabbings on the night of the murder from 4:00 p.m. through midnight of the next day. Additionally, when Rivers' employer asked her whether she knew anything about the victim's death, Rivers replied "I didn't do anything to that lady," and when asked whether she knew anything about the victim, Rivers replied "It's none of your business" and left the office.

In sum, as we found on direct review, the Commonwealth established that Rivers had access to the victim's home; was in the vicinity on the night of the murder; was seen shortly after the murder in possession of a large amount of money, blood stained and boasting of having stabbed and robbed someone; and acted in a manner consistent with guilt after the homicide.

part of the city during this period of time. In light of these facts, can it fairly be said that any error in disqualifying members of the venire rendered the trial court unable to reliably adjudicate guilt or innocence? That is what the PCRA appellant must plead and prove by a preponderance of evidence. *Accord, Commonwealth v. Holloway,* 559 Pa. 258, 739 A.2d 1039, 1047 (1999)(failure to prove that counsel's errors "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place" is fatal to a PCRA claim of ineffectiveness of counsel).

PCRA claims are not merely direct appeal claims that are made at a later stage of the proceedings, cloaked in a boilerplate assertion of counsel's ineffectiveness. In essence, they are extraordinary assertions that the system broke down. To establish claims of constitutional error or ineffectiveness of counsel, the petitioner must plead and prove by a preponderance of evidence that the system failed (*i.e.,* for an ineffectiveness or constitutional error claim, that in the circumstances of his case, including the facts established at trial, guilt or innocence could not have been adjudicated reliably), that his claim has not been previously litigated or waived, and where a claim was not raised at an earlier stage of the proceedings, that counsel could not have had a rational strategic or tactical reason for failing to litigate these claims earlier.

Rivers has failed to meet these requirements to be eligible for relief under the Post–Conviction Hearing Act with respect to any of her guilt-phase claims, and her petition, therefore, was properly dismissed with respect to these claims.[3]

---

**3.** We have discussed the guilt phase at length only with respect to Rivers' ineffectiveness of counsel claim because ineffectiveness of counsel claims are so commonly raised in PCRA petitions. All of Rivers' guilt phase claims are dismissed as well pursuant to § 9543(a)(3) and (4), failure to plead and prove that the claims are not finally litigated or waived and failure to plead and prove that counsel's failure to litigate the claim earlier cannot have been the result of any rational strategic or tactical decision. Her boilerplate assertion that any waiver is overcome by ineffectiveness of counsel in not raising the claim earlier is insufficient, for the pleading and proof of every ineffectiveness claim is deficient.

250

Remaining are Rivers' penalty phase claims, her claim of after-discovered evidence, her claim that the PCRA court was biased, and her claim of cumulative error.

 As we explained in *Commonwealth v. Chester*, 557 Pa. 358, 733 A.2d 1242 (1999), penalty-phase issues are cognizable under the PCRA. 733 A.2d at 1249.[4] Further, we held that the phrase "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place" is applicable at the penalty phase as well as the guilt phase of capital cases. *Chester* at 1249. In *Chester*, as in the present case, all of the penalty phase claims were raised in an ineffectiveness context, and as we stated earlier, to obtain relief on a claim for ineffective assistance of counsel, appellant must establish not only that the requirements of § 9543(a)(2)(ii) have been met, but also, as in any ineffectiveness claim, whether on direct or collateral appeal, appellant must also establish:

(1) that there is merit to the underlying claim; (2) that counsel had no reasonable basis for his or her course of conduct; and (3) that there is a reasonable probability that, but for the act or omission challenged, the outcome of the proceeding would have been different. *Commonwealth v. Jones*, 546 Pa. 161, 175, 683 A.2d 1181, 1188 (1996). Counsel is presumed to be effective and appellant has the burden of proving otherwise. *Commonwealth v. Marshall*, 534 Pa. 488, 633 A.2d 1100 (1993). Additionally, counsel cannot be considered ineffective for failing to raise a claim that is without merit. *Commonwealth v. Peterkin*, 538 Pa. 455, 469, 649 A.2d 121 (1994). . . .

4. In *Commonwealth v. Chester*, 557 Pa. 358, 733 A.2d 1242 (1999) this court held that certain penalty phase issues which are not waived or otherwise forfeited are cognizable under the PCRA. In *Chester* we stated:

Accordingly, we hold that claims alleging a violation of the constitution of this Commonwealth or the United States, or alleging ineffective assistance of counsel, which affected the reliable adjudication of the penalty in a capital case are cognizable under the PCRA in a first PCRA petition.
733 A.2d at 1250.

*Commonwealth v. Holloway,* 559 Pa. 258, 739 A.2d 1039, 1044 (1999).

As an illustration of what is required to establish an ineffectiveness of counsel claim at the penalty phase, consider Rivers' first and strongest penalty phase claim, that counsel was ineffective in failing to investigate and present to the jury appellant's history of sexual and physical abuse, her mental disturbances and the effects of her long-term drug abuse, as well as the effects of her ingesting drugs on the night of the murder. At the time of the penalty phase hearing, defense counsel had information that Rivers suffered from paranoid and explosive traits as well as chronic drug and alcohol abuse, that she was prone to overreact when challenged or threatened and that she should be considered potentially assaultive and dangerous. This diagnosis came from the pre-sentence mental health evaluation by a court psychologist, who concluded that Rivers had a mixed personality disorder but that she did not suffer from major mental illness.

Rivers devotes thirteen pages of her brief to the details of Rivers' history of drug and alcohol abuse, her abuse as a child, and her mental condition, and although this treatment of the issue adequately sets out the circumstances of the case for purposes of our review of this claim, as is required by § 9543(a)(2)(ii), nowhere does she even suggest that "counsel had no reasonable basis for his or her course of conduct," *Commonwealth v. Holloway, supra,* nor could she, for counsel had good reason for not emphasizing these aspects of Rivers' character. He called five witnesses who described Rivers as a caring and hard-working person who held down two jobs and worked her way through school to become a nursing assistant. Thus, defense counsel chose to emphasize the positive aspects of Rivers' background and character rather than the negative—that she was a drug addict who was unpredictable and assaultive—and this was a reasonable strategy designed to effect his client's interests. *See, Commonwealth v. Laird,* 555 Pa. 629, 726 A.2d, 346, 357 (1999)(Counsel was not ineffective for failing to present mitigating evidence at the penalty phase concerning petitioner's mental state and abusive childhood

252

when he presented instead evidence that petitioner was a devoted and loving family man. "Counsel will not be deemed ineffective for pursuing a particular strategy, as long as the course chosen was reasonable.") The claim, therefore, was properly dismissed for failure to demonstrate in her pleadings and brief how she would prove by a preponderance of evidence that counsel "had no reasonable basis for his or her course of conduct." *Holloway, supra.*[5]

In an attempt to escape a determination that she is not eligible for PCRA relief, Rivers states at the end of each of her penalty phase claims:

These errors violated the Pennsylvania and United States Constitutions, and were not harmless beyond a reasonable doubt. To the extent that he failed to properly preserve, raise and litigate this claim, prior counsel was ineffective

5. Mr. Justice Saylor, in dissent, would hold that Rivers is entitled to an additional post conviction hearing because defense counsel was ineffective in failing to present evidence of the defendant's past mental illness, drug and alcohol abuse, and unfortunate childhood. In effect, he would create what amounts to a per se rule that whenever the defendant is able to present evidence of mental disturbance and an unfortunate life, counsel will be ineffective if he fails to introduce this evidence in support of the claim that the defendant was unable to conform her conduct to the law because of extreme mental or emotional disturbance. 42 Pa.C.S. § 9711(e)(2),(3). Because so many intangibles are involved, our law has always been that we will not second-guess trial counsel's trial tactics, so long as there is a reasonable basis for what trial counsel did or did not do. While Mr. Justice Saylor cites two federal cases and one state case in which psychiatric evidence is treated as exceptionally important, the federal courts and Illinois notwithstanding, it is not a scientific certainty that persons who may have suffered mental illness are incapable of conforming their conduct to the law. In fact, it is equally plausible that there are many people with personal histories equivalent to Rivers' who spend their entire lives in conformity with the law. It may be that upon hearing evidence of Rivers' appalling background, jurors might decide that she is incapable of rehabilitation, and deserving of the harshest punishment available. On the other hand, jurors might also feel that a person who has made efforts to help herself is deserving of another chance. In any event, the lynchpin of Mr. Justice Saylor's view, that the history of mental disturbance, on this record, is, in and of itself, a passport to a mitigated penalty, is by no means a certainty, and we are in no position to substitute our judgment for that of trial counsel as to what is most likely to promote his client's best interest.

and such ineffective assistance of counsel undermines confidence in the outcome of the proceeding.

Rivers' brief at 66. Merely stating that there is something wrong with what counsel did, that his action violated the constitution and that it was not harmless error, does not meet the requirements of an ineffectiveness claim. Instead, the petitioner must state and demonstrate how she will prove by a preponderance of evidence "that counsel had no reasonable basis for his or her course of conduct." *Holloway, supra.* In other words, it is not enough to say that there was something wrong with what counsel did; the petitioner must also demonstrate that there was no reasonable basis for counsel's act.

Nowhere in the penalty phase of this case does Rivers demonstrate how she will prove that counsel could have had no reasonable basis for what he did, and she is not eligible for PCRA relief, therefore, on this claim or on any of her remaining penalty phase claims.

In sum, we hold that the ineffectiveness of counsel and constitutional error claims are dismissed either because they do not discuss the claims in the circumstances of the case, § 9543(a)(2)(i-ii), or because they do not demonstrate that counsel can have had no reasonable basis for his action. Further, all claims in the case are dismissed for the additional reasons that petitioner nowhere demonstrates that the claims she is making have not been waived or finally litigated, § 9543(a)(3),[6] and also that she does not plead and demonstrate how she will prove that counsel can have had no rational strategic or tactical reason for failing to raise present claims earlier. Section 9543(a)(4).[7]

6. A boilerplate assertion that no claim is waived because counsel was ineffective in failing to raise all of the claims now made is insufficient where petitioner fails to demonstrate how, for each claim, she will prove counsel's ineffectiveness.

7. Rivers claims also that she is entitled to a new PCRA hearing because the PCRA judge was biased and because cumulative error entitles her to relief. Finally, she claims that racial bias "infected" this proceeding and that this evidence was not available at trial. She does not claim, as she is required to do pursuant to § 9543(a)(2)(vi), that this new evidence would have changed the outcome had it been available at the

Twenty years ago, in *Commonwealth v. Watlington,* 491 Pa. 241, 420 A.2d 431 (1980), this court struggled with the problem of endless post-conviction claims brought pursuant to the Post–Conviction Hearing Act, the predecessor to the current PCRA. We were concerned with whether a petitioner could file endless post-conviction petitions simply by alleging that every lawyer before present counsel was ineffective in failing to raise the present claims. The fear was that in cutting off petitions for post-conviction relief, injustice might be done. My view was that in not cutting off post-conviction proceedings at some point, an injustice would be done, and that at the post-conviction stage, our real concern is not technical error, but whether the petitioner is innocent:

> On subsequent PCHA petitions, our interest is to prevent the incarceration of innocent persons, not, as at earlier stages, to prevent law enforcement agencies from abusing their authority. *Stone v. Powell,* 428 U.S. 465, 484–496, 96 S.Ct. 3037, 3047–3053, 49 L.Ed.2d 1067 (1976), *reh. denied,* 429 U.S. 874, 97 S.Ct. 197, 50 L.Ed.2d 158 (1977). It may be that a person convicted of a crime has had several lawyers and that the performance of these lawyers was in some respect imperfect. But a criminal defendant is not entitled to a perfect trial and it seems likely that if the accused were to be represent by fifty lawyers, some aspect of the performance of each could be decried as "ineffective." Both the accused and society are entitled to a final determination, an end to the proceedings that will be opened only in the case of a colorable due process claim significantly implicating the truth determining process, which, were it unaddressed by the Court, could have the effect of imprisoning an *innocent* person.

time of trial and she does not present argument in support of her claim. That Rivers has previously filed a motion with this court for remand based on this claim does not change the pleading and proof requirements of the PCRA. Thus, the racial bias claim is dismissed for failure to meet the requirements of § 9543(a)(2)(vi), and all three claims are dismissed for failure to establish lack of waiver or final litigation and failure to establish that there can have been no rational strategic or tactical reason for failure to raise the issues at an earlier time.

*Id.* at 251–52, 420 A.2d at 437 (Flaherty, J., dissenting, emphasis in original).

Our analysis here must be somewhat different from *Watlington* in that the PCRA limits the number of post-conviction appeals which may be filed, and so the endless filing of petitions is not part of this case, but the analysis is similar to *Watlington* in that we are dealing with a post-conviction proceeding, where our concern is primarily to prevent the incarceration of innocent persons. That is why the requirements of discussing ineffectiveness claims in the context of the circumstances of the case, demonstrating that the claim is not finally litigated or waived, and demonstrating that counsel can have had no rational strategic or tactical reason for failing to raise the claim at an earlier stage of the proceedings are so important. These requirements are devices to ensure that the claims being made are the claims of an innocent person. If counsel may have been ineffective in some particular, but the facts of the case independent of the alleged ineffectiveness establish guilt beyond a reasonable doubt, the ineffectiveness cannot have affected the truth determining process so that no reliable adjudication of guilt or innocence could be made. And that is what the petitioner must demonstrate in order to be eligible for relief under the PCRA. If the claim has been finally litigated, petitioner has received the review he is entitled to. If the claim is waived, petitioner may still be eligible for review, but only if he complies with the pleading and proof requirements of ineffectiveness claims. And once again, pleading and proof requirements for ineffectiveness claims will involve, at least, a statement of the facts established at trial by independent evidence, and that, in turn, implicates the petitioner's innocence. Finally, if the claim was not raised earlier, petitioner is entitled to a review of that claim only if he establishes that there can have been no rational tactical or strategic reason for not raising it earlier. If those extraordinary facts are established, we will review the claim because of a concern that petitioner may actually be innocent.

■ It has taken twenty years, but we have come full circle. We will no longer address the merits of claims which

256

do not comply with the requirements of the PCRA.[8]

Affirmed.

Justice ZAPPALA files a concurring opinion.

Justice CASTILLE files a concurring opinion.

Justice NIGRO concurs in the result.

Justice SAYLOR files a dissenting opinion joined by Justice CAPPY.

ZAPPALA, Justice, Concurring.

Although I agree that Appellant's request for post-conviction relief should be denied, I write separately to disassociate myself from a few ancillary issues the Opinion Announcing the Judgment of the Court addresses that are essential to a proper disposition of a PCRA petition.

First, the Opinion Announcing the Judgment of the Court commingles the terms "pleading" and "proving" and appears to hold that a petitioner is required to prove her case in the pleadings in order for the court to address the claims on the merits. As I noted in my concurring opinion in *Commonwealth v. Williams*, 782 A.2d 517, 528 (Pa.2001), this effectively turns the statute on its head and renders a PCRA proceeding merely a paper shuffle where the petitioner is denied the opportunity to demonstrate eligibility for relief. This is not consistent with the statutory language of the Act or the criminal rules applicable to PCRA proceedings.

As I stated in *Williams*,

Section 9543 of the Act, where the "plead and prove" language originates, refers solely to the "Eligibility for [post-conviction] relief." The section does not speak to any prerequisites a petitioner must satisfy in order to have a claim *considered* by the court. As long as the petitioner has

8. There is no conflict between our holding in this case and our holding in *Commonwealth v. Marrero*, 561 Pa. 100, 748 A.2d 202, 2000 Pa. Lexis 401 (decided 2–22–2000). This case concerns what is required to get relief under the PCRA; *Marrero* concerns what pleading is required in order for us to consider whether relief is due.

set forth "each ground relied upon in support of the relief requested," as set forth in Pa.R.Cr.P. 1502(b) (Content of Petition for Post–Conviction Collateral Relief; Request for Discovery), and attaches any relevant affidavits or other evidence in support of the grounds for relief (or states why they are not attached) in accordance with Pa.R.Cr.P. 1502(d), the petitioner is entitled to review of the claim by the trial court. This is not to say that our Court is precluded from dismissing a claim on appeal from denial of PCRA relief on the grounds that the petitioner failed to adequately develop an argument in support thereof (e.g., failed to demonstrate that the claim was not waived or that counsel did not have a reasonable basis for his conduct). This principle, however, is not unique to PCRA petitions, but may arise in appeals of any context where an appellant fails to support a claim with authority or sufficient argument. *Id.* at 528–529 (footnote omitted).

Here, Appellant claims that trial counsel was ineffective in failing to investigate and present at the penalty phase adequate evidence of mitigation regarding Appellant's history of extensive sexual and physical abuse as a child and young adult, her psychological disorders and the effects of drug abuse in the past and on the night of the murder. Appellant's brief describes the alleged mitigation evidence in great detail and refers to supporting affidavits and exhibits that were attached to the amended petition filed in the PCRA court, including affidavits of a licensed psychiatrist [1] and two family members.

In determining whether Appellant is entitled to relief on this claim, we must consider whether the PCRA court improperly denied her the opportunity to prove her allegations at an evidentiary hearing. Pursuant to Pennsylvania Rules of Criminal Procedure 1507 (Disposition Without Hearing) and

---

**1.** The psychiatrist opined that Appellant's "post-traumatic stress disorder, together with her depression, paranoid personality disorder, and possible learning impairments, constitute an extreme emotional disturbance and substantially impair her capacity to conform her conduct to the requirements of the law." Appellant's Brief at 56, citing affidavit of Julie Kessel, M.D., paragraph 16.

1509 (Procedures for Petitions in Death Penalty Cases; Hearing; Disposition), a petition may be dismissed without a hearing if the judge is satisfied that there are no genuine issues concerning any material fact and that the petitioner is not entitled to post-conviction collateral relief. In other words, where the facts alleged, if proven, would not entitle a petitioner to relief, then an evidentiary hearing is not required.

Although the substantial facts alleged in Appellant's PCRA petition were relevant to her ineffectiveness of counsel claim, they would not, even if accepted as true, entitle her to relief. I agree with the Opinion Announcing the Judgment of the Court that Appellant failed to demonstrate that counsel's chosen course of action was unreasonable. As noted by the PCRA court, counsel made a clear strategic decision regarding the type of character evidence to be introduced at the penalty phase. Appellant was portrayed as a woman who led a difficult life, but who bettered herself by obtaining an education and becoming a nursing assistant. This tactic is not unreasonable considering Appellant's prior mental health evaluations conducted by a court psychologist indicated that an "underlying major pathology was not clinically evident." PCRA Court Opinion at 30, citing Defense Exhibit 2. Thus, an evidentiary hearing is not required, as a reasonable strategy is apparent from the record.

My final point of contention with the Opinion Announcing the Judgment of the Court is its extensive reference to a petitioner's innocence in the context of a PCRA petition. Its reliance on language in the *dissenting* opinion in *Commonwealth v. Watlington*, 491 Pa. 241, 420 A.2d 431 (1980), is misplaced. As the Opinion Announcing the Judgment of the Court concedes, the discussion in *Watlington* was predicated on the unlimited filing of serial PCRA petitions, a practice prohibited by the current version of the Act. See 42 Pa.C.S. § 9545(b). Although the PCRA is intended to provide collateral relief for those "persons convicted of crimes they did not commit and persons serving illegal sentences," *id.* at Section 9542, I strongly disagree with any implication that a petitioner

alleging ineffectiveness of counsel must plead *and prove* his innocence. Such a burden is insurmountable and would virtually foreclose any possibility of a petitioner obtaining collateral relief. This is clearly not what was intended by the legislature.[2]

CASTILLE, Justice, Concurring.

I agree that appellant is not entitled to PCRA relief and I am generally in agreement with the lead opinion's analysis of the claims presented. I write separately, however, to address further my views concerning the essential substantive difference between waived claims and waived claims recast as ineffectiveness claims under the PCRA, as well as the constitutional nature and contours of ineffectiveness claims.

As the lead opinion correctly notes, the first nineteen of appellant's claims are, for the most part, briefed as allegations of error in the guilt and penalty phases of trial, accompanied by a boilerplate assertion that prior counsel was ineffective for failing to "properly preserve, raise and litigate this claim." [1]

**2.** Moreover, the only reference to innocence in the eligibility provisions of the Act is contained in Section 9543(A)(2)(iii), regarding an unlawfully induced guilty plea "where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent."

**1.** The only exception to this manner of presentation is Claim number X, alleging that trial counsel was ineffective for failing to investigate and present mitigation evidence at the penalty phase. Unlike the other claims, this claim focuses on perceived inadequacies of **counsel.** Nevertheless, as the lead opinion recognizes, the claim still fails on the merits, since appellant summarily dismisses the actual case in mitigation presented by counsel, which portrayed appellant in a positive light, and instead faults counsel for failing to present a **different** and **contradictory** case in mitigation, which would have portrayed her in a negative light. Such hindsight analysis does not prove ineffectiveness. *See, e.g., Commonwealth v. Hardcastle*, 549 Pa. 450, 701 A.2d 541, 546 (1997) (where complaint is not that counsel failed to investigate and present mitigation evidence, but that he should have presented different case in mitigation, based in part upon evidence contradictory to that presented, counsel's strategy plainly was reasonable). *Contrast Williams v. Taylor*, 529 U.S. 362, 395, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (upholding state trial court's determination that capital trial counsel was ineffective for failing to conduct investigation into defendant's background, "not because of any strategic calculation but because [counsel] incorrectly thought that state law barred access to such

But for the ineffectiveness tag-line, the arguments are presented in such a manner as if this were a direct appeal involving claims of trial court error, rather than the PCRA appeal that it is. As the lead opinion also notes, appellant justifies the manner in which she presents her claims by asserting in her Statement of the Scope and Standard of Review that the addition of an ineffectiveness label placed upon claims argued as trial court error renders the claims immune from the waiver provisions of the PCRA.

These claims are not reviewable as claims of trial court error because those versions of the claims could have been raised at trial and on direct appeal, but were not; thus, the claims are waived under the explicit terms of the PCRA. *See* 42 Pa.C.S. §§ 9543(a)(3), 9544a(b). Moreover, as we have made clear, our practice of relaxing our own rules of waiver in direct capital appeals cannot act to excuse waivers that arise from the terms of the PCRA. *E.g., Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693, 700 (1998). A contrary practice, in addition to destroying any prospect of finality in criminal cases, would run "afoul of the very terms of the [PCRA,] which excludes waived issues from the class of cognizable PCRA claims." *Id.* at 700. Moreover, "[t]he legislature has clearly directed that the PCRA provide[s] the sole means for obtaining collateral review and relief, encompassing all other common law rights and remedies, including habeas corpus." *Commonwealth v. Chester,* 557 Pa. 358, 733 A.2d 1242, 1250–51 (1999) (PCRA subsumes remedy of habeas corpus with respect to remedies offered under PCRA). *See also Commonwealth v. Hall,* 565 Pa. 92, 771 A.2d 1232, 1235 (2001) ("By its own language, and by judicial decisions interpreting such language,

records"). The claim also fails because appellant states only that counsel "knew or should have known" of the alleged additional mitigation evidence subsequent counsel has discovered. Such a speculative allegation, unaccompanied by so much as an affidavit from trial counsel as to what investigation trial counsel **actually** undertook, and what he discovered, does not raise a colorable claim of ineffectiveness. Nor does the claim warrant an evidentiary hearing. *See Commonwealth v. Scott,* 561 Pa. 617, 752 A.2d 871, 877 n. 8 (2000) ("An evidentiary hearing ... is not meant to function as a fishing expedition for any possible evidence that may support some speculative claim of ineffectiveness").

the PCRA provides the sole means for obtaining state collateral relief"); *Commonwealth v. Peterkin*, 554 Pa. 547, 722 A.2d 638, 640 (1998) (same). Accordingly, constitutional claims, which might otherwise be cognizable under the PCRA, are simply unavailable if they are waived. Thus, contrary to appellant's apparent misunderstanding, her boilerplate allegations of ineffectiveness of trial counsel do not "revive" her waived claims of trial error, nor do they "excuse" her waiver of those claims.

The significance of appellant's allegations of ineffectiveness is that those are stand-alone, substantive, constitutional claims, which decidedly **are** cognizable under the PCRA, because the PCRA explicitly states that they are. 42 Pa.C.S. § 9543(a)(2)(ii). Although often "derivative" from waived claims of trial error, *Commonwealth v. Williams*, 782 A.2d 517, 526 n. 5 (Pa.2001), claims of counsel ineffectiveness are nevertheless analytically and constitutionally distinct from the underlying claims to which they relate. They are assessed under the U.S. Supreme Court's settled construct as outlined in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and its progeny.[2] Moreover, appellant's ineffectiveness claims are not waived under the PCRA because, appellant having been represented by the same counsel on direct appeal as at trial, this PCRA proceeding is deemed to represent appellant's first opportunity to raise claims respecting the stewardship of trial/direct appeal counsel. *See* 42 Pa.C.S. § 9544(b) (issue is waived under PCRA only if petitioner could have raised it but failed to do so before trial, at trial, on appeal, or in prior state postconviction proceeding).[3]

**2.** In *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987), this Court recognized that *Strickland* 's two-part performance and prejudice test was the same test for ineffectiveness as under our Constitution. We have come to characterize the test as a tripartite one, by dividing the performance element into two distinct parts, *i.e.*, arguable merit and lack of reasonable basis.

**3.** A separate question, of course, is whether appellant's boilerplate ineffectiveness claims should be deemed waived under this Court's Rules of Appellate Procedure and principles of appellate jurisprudence concerning what is necessary to adequately present a claim for review. As I understand the lead opinion, it does not deem appellant's ineffec-

Ineffectiveness claims, of course, have become the lifeblood of the PCRA. PCRA petitioners routinely take waived claims of trial error and raise them under the rubric of ineffectiveness, alleging however many "layers" of ineffectiveness as are necessary to obtain review. But, as I have recently stressed at length elsewhere, it is absolutely essential to recognize that ineffectiveness claims are not the same as the waived underlying claims from which they often derive. *See generally Williams*, 782 A.2d at 534–536 (discussing distinct nature of claims of ineffective assistance).

Turning to the merits of appellant's ineffectiveness claims, it should be emphasized that, while this Court has shown a degree of latitude in its construction of our appellate rules and has, accordingly, deemed boilerplate allegations of ineffectiveness to be sufficient for the claim to survive outright dismissal as waived, we have not purported to relax (nor are we empowered to relax) the **substantive** standard that governs merits review of Sixth Amendment claims of counsel ineffectiveness. *Williams*, 782 A.2d at 526 n. 5 ("we make no suggestion here that there should be a relaxation of the substantive Sixth Amendment standard"); *see also id.* at 527 (Zappala, J., concurring) (*Marrero* merely expressed view that boilerplate assertion of ineffectiveness is sufficient to overcome waiver, but did not set forth how such claims should be developed); *id.* at 530 (Castille, J., concurring) (noting distinction between waiver under PCRA and waiver as question of appellate jurisprudence, and noting separate

tiveness claims to be waived, notwithstanding that they are stated in boilerplate fashion, but instead treats the failure to develop relevant arguments as a failure on the merits of the claims. As the lead opinion notes, *see* op. at 933 n. 8, this approach is consistent with this Court's holding in *Commonwealth v. Marrero*, 561 Pa. 100, 748 A.2d 202 (2000). It is also consistent with the more recent, prevailing *dicta* in *Commonwealth v. Williams*, 782 A.2d 517, 525–526 (Pa.2001). *But see id.* at 530 (Castille, J., concurring) (constitutional claims that are undeveloped in briefs should be deemed waived); *id.* at 537 (Nigro, J., concurring) (ineffectiveness claim should be deemed waived unless each prong of test is discussed in argument section of brief); *Marrero*, 748 A.2d at 204–05 (Nigro, joined by Castille and Newman, JJ., concurring) (layered claims of appellate counsel ineffectiveness that were supported by no argument in brief should be deemed waived).

question of substantive standards for analyzing claims of ineffective assistance). As the lead opinion correctly notes, appellant's cognizable ineffectiveness claims are subject to specific requirements under the PCRA and under the settled Sixth Amendment test for ineffectiveness. Mere boilerplate assertions, such as those made by appellant here, are inadequate to prove the effective denial of the right to counsel necessary to warrant PCRA relief.

This is as true under the constitutional standard as under the requirements of the PCRA. The PCRA provisions regarding ineffectiveness require no more than that which a constitutional ineffectiveness analysis **has always** required, regardless of whether the claim is posed under the PCRA or at an earlier appropriate stage of the litigation, *e.g.*, where new counsel enters an appearance on direct appeal. Counsel is always presumed effective; the unshifting burden to prove ineffectiveness always rests upon the defendant; and the defendant must always plead and prove both that counsel's performance was deficient (the arguable merit and lack of reasonable basis prongs of our test), and that actual prejudice resulted from the deficient performance. Boilerplate allegations have never been sufficient to discharge this affirmative burden to rebut the presumption of effectiveness. *Commonwealth v. Pettus,* 492 Pa. 558, 424 A.2d 1332, 1335 (1981) (court will not consider boilerplate claims of ineffective assistance). *See also Commonwealth v. Morris,* 546 Pa. 296, 684 A.2d 1037, 1045 (1996) (speculative claim of ineffectiveness summarily rejected; ineffectiveness claims cannot be raised in vacuum) (citing cases); *Commonwealth v. Hutchinson,* 521 Pa. 482, 556 A.2d 370, 372 (1989) (defendant bears burden of proving allegations of ineffective assistance by submission of relevant proofs); *Commonwealth v. Hentosh,* 520 Pa. 325, 554 A.2d 20, 24 (1989) (same). *Accord Commonwealth v. Ragan,* 538 Pa. 2, 645 A.2d 811, 829 (1994) (boilerplate allegation is no basis for relief in capital PCRA appeal).

Similarly, the PCRA's requirements that ineffectiveness claims be considered "in the circumstances of the case," and that the petitioner show that counsel's deficient performance

resulted in an unreliable adjudication of guilt or innocence, simply mirror the constitutional ineffectiveness analysis under *Strickland*'s prejudice requirement. *See Commonwealth v. Lantzy,* 558 Pa. 214, 736 A.2d 564, 570 & n. 6 (1999); *Commonwealth v. Kimball,* 555 Pa. 299, 724 A.2d 326, 333 (1999). The *Strickland* Court noted that, in determining prejudice, the court "must consider the totality of the evidence before the judge or jury." 466 U.S. at 695, 104 S.Ct. 2052. Indeed, as the Federal Circuit Courts have recognized, it is impossible to determine *Strickland* prejudice without considering the circumstances of the trial. *See Buehl v. Vaughn,* 166 F.3d 163, 172 (3d Cir.1999) (since *Strickland*'s prejudice prong requires court to determine whether there is reasonable probability that, but for counsel's error, result of trial would have been different, court simply cannot make prejudice determination "without considering the strength of the evidence against the accused;" furthermore, "every other circuit has also recognized that, in analyzing *Strickland*'s prejudice prong, a court must consider the magnitude of the evidence against the defendant"). *Strickland* also specifically defined prejudice in terms of the reliability of the verdict. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052 (prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable"). *See also Williams v. Taylor,* 529 U.S. at 390–91, 120 S.Ct. 1495 (same). Obviously, in drafting the PCRA, the General Assembly was aware of what was required to prove ineffectiveness under the Sixth Amendment. The PCRA largely mirrors the constitutional framework.

In short, the standards governing review of ineffectiveness claims, including the pleading and proof requirements, are familiar and well-settled. Consistent with both the terms of the PCRA and settled constitutional authority, the lead opinion has properly held that appellant's boilerplate assertions of ineffectiveness do not entitle her to relief under the PCRA.

The lead opinion concludes with *dicta* stating that this Court "will no longer address the merits of claims which do not comply with the requirements of the PCRA." But, as I under-

stand the lead opinion, including its distinction of *Marrero*, it has addressed the merits of appellant's claims here, concluding that appellant's failure to address necessary elements of the governing requirements of the PCRA and the constitutional ineffectiveness standard requires their rejection. Moreover, although I still agree with Justice Nigro's position as stated in his concurrence in *Marrero*, which I joined, I accept the force of *stare decisis*. As I understand the majority opinion in *Marrero*, which the author of the present majority opinion joined, and this Court's more recent *dicta* interpreting *Marrero* in *Williams*, we must continue to entertain the merits of these boilerplate claims, notwithstanding that the deficiencies in their presentation inevitably will prove fatal.

I would simply add that, like any legal claim, an ineffectiveness claim may fail on the merits for a number of independently valid reasons. So long as there is no jurisdictional question (*i.e.*, the PCRA petition was timely filed), a court rejecting a particular PCRA claim is not required to prefer one proper ground of disposition over another. In *Marrero*, this Court rejected layered, boilerplate claims of appellate counsel ineffectiveness because it deemed the underlying claims of counsel ineffectiveness to be meritless, rather than focusing on the failure of the appellant to address other, equally necessary elements of the ineffectiveness standards. I view the *Marrero* disposition as an available and appropriate, but not a required and exclusive, approach to the merits of a reviewable ineffectiveness claim. This is so because both the U.S. Supreme Court and this Court have made clear that a court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the *Strickland* test, the court may proceed to that element first. *See Smith v. Robbins*, 528 U.S. 259, 286 n. 14, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000), *citing Strickland*, 466 U.S. at 697, 104 S.Ct. 2052; *Albrecht*, 720 A.2d at 701.

The more difficult question is what sort of a message this Court sends to PCRA petitioners and practitioners by choosing, or preferring, one available method of disposition over

another. Appellant's arguments in this case, like the non-argument forwarded in *Marrero*, at best may be construed as attempting to establish the arguable merit of her underlying waived claims while she then simply assumes that the failure to pursue such claims renders counsel *per se* ineffective. This *per* se approach to ineffectiveness fails to establish **either** the performance prong (*i.e.*, lack of reasonable basis) or the prejudice prong of the *Strickland* test. Accordingly, the claims must, inevitably, fail. The advantage of discussing the fatal deficiency in such an argument on the merits is that it reinforces for PCRA petitioners and practitioners alike the necessity that they address **all** necessary substantive elements of a claim in order to actually obtain relief on it, as opposed to the decidedly Pyrrhic victory that will result when a claim is undeveloped and survives waiver only as a matter of this Court's grace. At least in cases where the substantive deficiency in the argument is pervasive, as in this case, I think we better serve by focusing on those substantive deficiencies, as the majority has done here.

SAYLOR, Justice, Dissenting.

Appellant's post-conviction claims were dismissed by the PCRA court without an evidentiary hearing. The lead opinion affirms the summary dismissal of Appellant's claim that trial counsel was ineffective for failing to investigate and present an adequate case of mitigation at the penalty phase of trial, finding that Appellant's brief does not suggest that trial counsel lacked a reasonable basis for his course of conduct. The pertinent section of Appellant's brief opens as follows:

In an unprecedented disregard of his obligations as a death penalty lawyer, trial counsel failed to investigate and present abundant and overwhelmingly powerful mitigating evidence.

At the penalty phase of trial, defense counsel briefly presented mitigating evidence that appellant was a good mother and hard worker who had struggled to overcome her earlier problems in order to provide a better life for herself. That testimony completely failed to inform the jury of the

horrific physical and sexual abuse inflicted on appellant by her own parents, or of the lifelong effects of that abuse on her mental and emotional functioning. It totally failed to tell the jury the full extent of the nightmare of appellant's prior life. It told the jury nothing at all about appellant's *well-documented* and mitigating mental and emotional disturbances. . . . All of this mitigating information was readily available to counsel had counsel conducted a minimally adequate investigation. Counsel's failure to conduct such an investigation and present the available and compelling mitigation is simply unsupportable and cannot be justified through any hindsight analysis.

(emphasis in original). The brief proceeds to describe the alleged mitigation evidence in substantial detail, with references to supporting affidavits and exhibits that were attached to the amended petition filed in the PCRA court, including affidavits of a licensed psychiatrist, Appellant's daughter, and Appellant's common-law husband. While I join in the lead's expressed concern regarding certain aspects of the appellate advocacy demonstrated in this and other capital cases, given the described presentation, I do not believe that Appellant or her present counsel is fairly faulted for not framing an appropriate argument on this particular claim.

The opinion announcing judgment of the court deems Appellant's proffer of an alternate case of mitigation irrelevant, since trial counsel did present a mitigation theory at trial. Yet, in cases in which an adequate proffer is made, our precedent requires some assessment and comparison of the qualitative aspects of the alternative strategies within the circumstances of the particular case. *See Commonwealth v. Brown,* 544 Pa. 406, 425, 676 A.2d 1178, 1187 (1996) (allowing for the possibility of post-conviction relief if "it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued")(quoting *Commonwealth v. Pirela,* 510 Pa. 43, 59, 507 A.2d 23, 31 (1986)), *cert. denied,* 519 U.S. 1043, 117 S.Ct. 614, 136 L.Ed.2d 538 (1996); *see also Commonwealth v. Williams,* 557 Pa. 207, 245–49, 732 A.2d 1167, 1187–90 (1999). In the

present first-degree murder case involving the intentional, brutal killing of an elderly woman who was in Appellant's care, Appellant's claim appears to be that the effort to invoke the catch-all mitigator by casting some general positive light upon her life, while salutary, carried substantially less weight with the jury than would a demonstration that she suffered or had been the subject of serious, affective environmental abnormalities and mental illness.[1] Significantly, Appellant contends that pursuit of the latter strategy would have established the specific mitigating circumstances involving extreme mental or emotional disturbance, and substantially impaired capacity to appreciate the criminality of her conduct and to conform her conduct with the requirements of the law.[2] *See* 42 Pa.C.S. § 9711(e)(2), (3). Where, as here, such a claim is supported by the requisite affidavits and documentation, I would permit the petitioner to proceed with the attempt to establish both the alternative strategy and its relative weight in comparison to the strategy actually pursued at a post-conviction hearing.[3]

1. Many jurisdictions recognize that, in some circumstances, substantial weight may attach to the latter form of evidence. *See, e.g., United States v. Barnette*, 211 F.3d 803, 825 (4th Cir.2000)(stating that "psychiatric evidence is an important part of many trials"); *Baxter v. Thomas*, 45 F.3d 1501, 1515 (11th Cir.1995)("[p]sychiatric mitigating evidence 'has the potential to totally change the evidentiary picture' ") (quoting *Middleton v. Dugger*, 849 F.2d 491, 495 (11th Cir.1988)); *People v. Coleman*, 168 Ill.2d 509, 214 Ill.Dec. 212, 660 N.E.2d 919 (1995)("[t]his court has acknowledged the critical importance of a defendant's background and mental health to the sentencing decision"). As noted below, the Pennsylvania General Assembly has also recognized this fact in its statutory prescription of two mitigating circumstances related to mental condition. *See* 42 Pa.C.S. § 9711(e)(2), (3).

2. Centrally, Appellant supports this contention with the affidavit of an expert psychiatrist to the effect that, at the time of her offense and currently, Appellant suffered and suffers: post-traumatic stress disorder as a result of, *inter alia,* being persistently subjected to traumatic childhood physical and sexual abuse and rape as an adult woman; dysthymia with a history of depressive episodes; and a paranoid personality disorder that has at times resulted in overtly psychotic episodes. The psychiatrist offers the opinion that such conditions constitute an extreme emotional disturbance and substantially impaired and impair Appellant's capacity to appreciate the criminality of her conduct and conform her conduct to the requirements of the law.

3. In *Commonwealth v. Smith*, 544 Pa. 219, 675 A.2d 1221 (1996)(plurality opinion), this Court vacated a sentence of death and remanded for a

The lead opinion describes this approach as suggesting that Appellant's allegation of mental illness is, on this record, a "passport to a mitigated penalty." Op. at 930–31 n. 5. This mischaracterizes my position, however, since I do not purport to speak to the merit of Appellant's claim. Rather, in light of the averments and supporting affidavits and documentation presented, I simply cannot support the reasons offered by the majority in countenancing the summary dismissal of Appellant's claim without a factual assessment concerning the veracity and weight of Appellant's evidence in the circumstances of this particular case.[1] Indeed, it would seem that the same reasons offered by the lead to support summary dismissal in the present case could have been, but were not, employed by this Court in *Smith* (in which a hearing was conducted and

new sentencing hearing on a claim that counsel was ineffective in failing to present mitigating evidence concerning the defendant's mental health. *See id.* at 245–46, 675 A.2d at 1234. Trial counsel in the case had pursued two other mitigating factors but apparently had otherwise elected to limit the scope of the presentation for tactical reasons. *See id.* at 245 n. 12, 675 A.2d at 1233–34 n. 12. Nevertheless, based upon the fact that the record disclosed that the appellant suffered some mental problems, and the jury appeared to consider the appellant's mental state significant, the Court granted relief. *See id.* at 244–45, 675 A.2d at 1233–34 (holding that "where counsel is informed that his client has suffered some mental problems that may provide evidence of mitigation in the penalty phase, counsel is ineffective if he fails to pursue such evidence").

In my view, the narrow holding of *Smith* is assailable for the reason that a post-conviction hearing actually had been conducted in the case and the appellant apparently failed to develop an actual record of mental health mitigation to support the necessary conclusion that the alternative, available course substantially outweighed the strategy pursued. *See Smith*, 544 Pa. at 250–51, 675 A.2d at 1236 (Castille, J., dissenting). Nevertheless, the essential principle has carried forward in our decisional law that, where the issue of an attorney's ineffectiveness in failing to pursue an alternative strategy to establish mitigation is properly framed with an adequate proffer, an assessment should be undertaken of the nature and quality of the evidence that purportedly should have been presented to the sentencing jury, as well as of the reasonableness of trial counsel's investigation. *See, e.g., Commonwealth v. Basemore*, 560 Pa. 258, 289–94, 744 A.2d 717, 735–38 (2000); *Williams*, 557 Pa. at 245–49, 732 A.2d at 1187–90.

4. Although the majority asserts that this would constitute an "additional" post-conviction hearing, the record should be made clear that Appellant has had *no* hearing on her post-conviction claims.

270

this Court ultimately granted sentencing relief), or in *Basemore* (in which a post-conviction hearing was conducted), or in *Williams* (in which this Court found error in the PCRA court's failure to conduct a post-conviction hearing).

Lastly, I join the opinion announcing the judgment of the court and concurring opinions in emphasizing that post-conviction petitioners absolutely must plead and support the essential elements of a claim under the Post Conviction Relief Act in order to be entitled to a hearing on their claims, and must establish those essential elements to demonstrate eligibility for relief. Since petitioners are subject to a final judgment of sentence and have had the benefit of an available direct appeal process, they face substantial hurdles; ultimately, the availability of post-conviction relief will often depend upon factual and legal findings by a post-conviction court entailing credibility assessments and judgments concerning the weight of the evidence presented. *See generally Basemore*, 560 Pa. at 293–94, 744 A.2d at 737 (remanding to a post-conviction court for the performance of such credibility assessments and judgments concerning alleged mitigating evidence). Nevertheless, in the face of a proffer such as that made by Appellant, I do not believe that such process should be circumvented by summary dismissal. *Accord Commonwealth v. Williams*, 566 Pa. 553, 782 A.2d 517 (2001).

Justice CAPPY joins this dissenting opinion.