J-S10003-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JACOB MATTHEW CHRISTINE, | |
| Appellant | No. 3816 EDA 2015 |

Appeal from the PCRA Order Entered December 2, 2015
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0002002-2007

BEFORE: BENDER, P.J.E., DUBOW, J., and SOLANO, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED MARCH 01, 2017**

Appellant, Jacob Matthew Christine, appeals *pro se* from the order entered on December 2, 2015, dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. After careful review, we affirm.

The PCRA court summarized the facts underlying Appellant's conviction as follows:

> On February 22nd, 2007, members of the Allentown Police Department were dispatched to the Super 8 Motel, located at 1033 Airport Road, Allentown, Lehigh County, Pennsylvania, for a shooting in progress. There, they came across Cameron Fodero and Jeremy Pahula who indicated that they encountered [Appellant] in the dumpster area, outside of the Super 8 Motel. Mr. Fodero and Mr. Pahula approached [Appellant] and a brief argument ensued. During the course of that questioning and argument, [Appellant] produced an automatic weapon from behind his back and pointed the weapon towards the ground, in the direction of Mr. Fodero and Mr. Pahula, and fired several shots. The ricochets from those shots resulted in a cut

underneath Mr. Fodero's right eye and Mr. Pahula['s] being struck in the center of his chest, both minor gunshot wounds. Mr. Fodero ran away and [Appellant] then ran towards the front of the motel, with Mr. Pahula['s] giving chase. While being chased, [Appellant] continued to fire several more shots at Mr. Pahula. Mr. Pahula eventually caught up with [Appellant] just in front of the lobby area of the Super 8 Motel and a physical struggle ensued.

Mr. Pahula broke away. During the course of the physical altercation, Mr. Pahula saw a chain lying on the ground and took that in his possession. On his way back to his room, Mr. Pahula yelled to the night clerk that he had been shot. The night clerk also saw [Appellant] run by.

A short time later, that same clerk saw [Appellant] heading towards the front of the Super 8 Motel, this time having changed his clothes from a sweater to a black muscle shirt. Police units arrived shortly thereafter.

At the direction of the night clerk, [Appellant] was taken into custody by Allentown police. Subsequently, a search warrant was obtained for [Appellant]'s room, Room Number 126. $3,529.00 in US currency was found in the refrigerator, alongside [Appellant]'s identification. Police found a .40 caliber High Point semi-automatic handgun, which was loaded with three hollow point shells in the magazine and one hollow point shell in the chamber, and male clothing in a tote caddy. Additionally, a backpack was found which contained [Appellant]'s Social Security card, a certificate from the Department of Education, [Appellant]'s résumé, and an "owe" sheet. Inside this backpack, police also found 82.5 grams of cocaine and 128 grams of marijuana, variously packaged. Police found several empty glass vials, Inositol (a cutting agent used for the distribution of cocaine), and razors within the room.

It was later determined that [Appellant] did not have a license to carry the firearm.

PCRA Court Opinion ("PCO"), 3/21/16, at 6-7 (quoting this fact summary

*verbatim* from the court's December 2, 2015 opinion dismissing Appellant's

PCRA petition).

On November 2, 2007, Appellant, while represented by Nathan Schiesser, Esq., pled *nolo contendere* to two counts of aggravated assault,[1] one count of carrying a firearm without a license,[2] and two counts of possession of a controlled substance with intent to deliver ("PWID"),[3] pursuant to a negotiated plea agreement. However, prior to sentencing, Appellant successfully withdrew his plea. **See** Order Granting Motion to Withdrawal Plea of *Nolo Contendere*, 12/05/07, at 1 (single page). Attorney Schiesser subsequently filed a petition to withdraw as Appellant's counsel, which was granted by the trial court on January 3, 2008.

Appellant obtained new counsel, Michael Parlow, Esq., who entered his appearance on January 23, 2008. On February 15, 2008, Appellant filed an omnibus pre-trial motion, which was dismissed as untimely on February 20, 2008. Appellant subsequently entered a negotiated guilty plea on June 6, 2008, to the same charges listed above. That same day, Appellant was sentenced to consecutive terms of 1-2 years' incarceration for the two aggravated assault offenses, a concurrent term of 18-36 months' incarceration for the firearm offense, a consecutive term of 30-60 months' incarceration for one PWID offense, and a consecutive term of 5 years'

_____

[1] 18 Pa.C.S. § 2702(a)(4).
[2] 18 Pa.C.S. § 6106.
[3] 35 P.S. § 780-113(a)(30).

probation for the remaining PWID offense. This resulted in an aggregate sentence of 4½-9 years' incarceration, to be followed by 5 years' probation.

Appellant filed a timely, *pro se* direct appeal.[4] On May 17, 2010, this Court affirmed his judgment of sentence. **Commonwealth v. Christine**, 4 A.3d 194 (Pa. Super. 2010) (unpublished memorandum). On June 28, 2011, our Supreme Court denied Appellant's petition for allowance of appeal from that decision. **Commonwealth v. Christine**, 23 A.3d 1054 (Pa. 2011).

Appellant then filed a timely, *pro se* PCRA petition on February 2, 2012. Michael Wiseman, Esq., was appointed to represent Appellant during the PCRA proceedings.[5] In his *pro se* petition, Appellant raised, *inter alia*, several ineffective assistance of counsel ("IAC") claims. A PCRA hearing was conducted on October 12, 2012, at which time Attorney Parlow testified. Following that hearing, on February 12, 2013, Appellant filed a supplement to his PCRA petition, alleging an additional IAC claim pertaining to Attorney

---

[4] For a brief time during Appellant's direct appeal, he was represented by appointed counsel, Albert Nelthropp, Esq. However, Appellant successfully waived his right to appellate counsel, and proceeded *pro se* for the remainder of his direct appeal. **See** Order, 3/11/10, at 1 (single page) (permitting Attorney Nelthropp to withdraw in his representation of Appellant, and permitting Appellant to proceed *pro se*, following a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998)).

[5] It appears from the record that Appellant was briefly appointed standby counsel prior to when Attorney Wiseman entered his appearance.

Schiesser. A second PCRA hearing was held to address the supplementary claim, at which Attorney Schiesser testified. A third PCRA hearing was conducted on July 10, 2014, at which Appellant and Detective Ralph Romano testified.[6] Ultimately, the PCRA court dismissed Appellant's petition by order and opinion dated December 2, 2015.

Appellant filed a *pro se* notice of appeal on December 8, 2015. New counsel was briefly appointed for his appeal, however, Appellant filed a motion to proceed *pro se* with this Court. He also filed a *pro se*, court-ordered Pa.R.A.P. 1925(b) statement in the PCRA court on January 21, 2016. On January 20, 2016, this Court remanded for a **Grazier** hearing to determine "whether … Appellant's waiver of counsel is knowing, intelligent and voluntary[.]" Order, 1/20/16, at 1 (single page). Appellant's **Grazier** hearing was conducted on February 9, 2016, at which time the PCRA court determined that Appellant's choice to proceed without counsel was made knowingly, intelligently, and voluntarily. N.T. **Grazier** Hearing, 2/9/16, at 6. Also during that hearing, Appellant requested that the PCRA court accept his previously rejected, *pro se* Rule 1925(b) statement, and the court agreed.[7]

---

[6] Detective Romano was the lead investigator in Appellant's case, as well as the affiant who obtained the search warrant.

[7] The statement had initially been rejected because, at the time of its filing, Appellant was represented by the attorney appointed by the court after Appellant had filed his *pro se* notice of appeal.

*Id.* at 7. The PCRA court then filed its Rule 1925(a) opinion on March 21, 2016.

Appellant now presents the following questions for our review, restated for clarity, as follows:

  I.    Was Attorney Schiesser ineffective for failing to file a suppression motion directed at the fruits of the search of Appellant's motel room?

  II.   Was Attorney Parlow ineffective during the second plea process, for failing to object to the factual basis of the plea, for coercing Appellant to plead guilty, for misinforming Appellant about his direct appellate rights, and/or for ignoring Appellant's assertions of innocence?

  III.  Was Attorney Parlow ineffective for failing to challenge the Commonwealth's rescinding of the initial plea agreement after Appellant withdrew his *nolo contendere* plea?

  IV.   Was Attorney Schiesser ineffective for failing to file a Pa.R.Crim.P. 600 motion for nominal bail, as Appellant's continued incarceration after the first 180 days of incarceration contributed to coercing him to accept a plea?

  V.    Was Attorney Parlow ineffective for failing to notify the trial court of a threatening letter Appellant received from a victim, and was Attorney Wiseman ineffective for failing to question Attorney Parlow regarding that matter during the October 12, 2012 PCRA hearing?

  VI.   Was Attorney Wiseman ineffective for failing to investigate and litigate the issue that the Commonwealth tampered with the notes of testimony from prior hearings, omitting testimony favorable to Appellant's legal interests, or otherwise ineffective for failing to have the omission corrected?

  VII.  Were Attorneys Schiesser, Parlow, and Wiseman cumulatively ineffective?

Appellant's Brief, at 3.

Regarding Appellant's seventh claim, wherein he asserts the cumulative ineffectiveness of all prior counsel, we deem that matter waived, as it was not raised in Appellant's Rule 1925(b) statement. **See Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998) ("Any issues not raised in a 1925(b) statement will be deemed waived.").

Furthermore, after a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion(s) of the Honorable Kelly L. Banach, we conclude that the remainder of Appellant's issues merit no relief. The PCRA court's Rule 1925(a) opinion (which incorporates its December 2, 2015 opinion that accompanied the order dismissing Appellant's PCRA petition) comprehensively discusses and properly disposes of the first six questions presented in Appellant's brief. Specifically, we conclude in light of its opinion(s) that the PCRA court's dismissal of Appellant's PCRA petition was "supported by evidence of record and … free of legal error." **Commonwealth v. Ford**, 44 A.3d 1190, 1194 (Pa. Super. 2012). Accordingly, with the exception of the claim we deem waived for appellate review, we affirm the order denying Appellant's PCRA petition on the basis set forth in the PCRA court's opinion(s).

Order **affirmed**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/1/2017

## IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
### CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA    )
               )
     vs.           )   No.:   2002 of 2007
               )
JACOB CHRISTINE,       )
      Appellant     )

### OPINION

**KELLY L. BANACH, J.:**

By way of background, the Court provides a brief summary of the relevant

procedural history of the underlying case. On February 23, 2007, the Appellant was

arrested and charged with two counts of Aggravated Assault[1], one count of Firearms

Not to be Carried Without a License[2], two counts of Possession with the Intent to

Deliver[3], two counts of Possession of a Controlled Substance[4], and one count of

Possession of Drug Paraphernalia[5],[6]

The Appellant, represented by Nathan Bauer Schiesser, Esquire, waived his

Preliminary Hearing on May 2, 2007, and was arraigned on the above charges on June

11, 2007. On November 2, 2007, the Appellant pled *nolo contendere* to both counts of

Aggravated Assault, Firearms Not to be Carried Without a License, and both counts of

Possession with Intent to Deliver. At the time of the *nolo contendere* plea, the

Commonwealth agreed to have both counts of Aggravated Assault run concurrently

---

[1] 18 Pa.Con.Stat.Ann. § 2702 (A)(4)
[2] 18 Pa.Con.Stat.Ann. § 6106 (A)(1)
[3] 35 P.S. §780-113 §§ (A)(30)
[4] 35 P.S. §780-113 §§ (A)(16)
[5] 35 P.S. §780-113 §§ (A)(32)
[6] The original charges also included two counts of Attempted Homicide (18 Pa.Con.Stat.Ann. §2501(a)) and two counts of Simple Assault (18 Pa.Con.Stat.Ann. §2701(a)(2)). These charges were withdrawn at the Preliminary Hearing.

2

with each other and the remaining counts to run concurrently with each other. The Commonwealth also agreed to waive the mandatory sentencing provision. A Pre-sentence Investigation Report (PSI) was ordered and sentencing was deferred to December 5, 2007.

Prior to sentencing, the Appellant filed a *pro se* Motion to Modify or Withdraw his *nolo contendre* plea. After a hearing, the Motion was granted, the *nolo contendere* plea was withdrawn, and a Bail Hearing was scheduled for December 10, 2007.

On December 28, 2008, Mr. Schiesser filed a Petition to Withdraw as Counsel. Without opposition from the Appellant and no opinion expressed by the Commonwealth, the Court granted the Petition on January 3, 2008.

On January 23, 2008, the Appellant's new counsel, Michael K. Parlow, Esquire filed a pre-trial discovery request. On February 15, 2008, an Omnibus Pretrial Motion (OPTM) was filed on the Appellant's behalf. In response to this Motion, the Commonwealth filed a Motion to Quash the Appellant's Omnibus Pretrial Motion because the OPTM was not timely filed by the Appellant. On February 20, 2008, the Court dismissed the OPTM. On March 25, 2008, the Appellant filed a Motion for Reconsideration of Denial of Suppression Motion. The Matter was set for Hearing and Status Conference on April 23, 2008. On that date, the Motion for Reconsideration was abandoned and a trial date of June 9, 2008 was set.

On June 6, 2008, the Appellant entered a guilty plea to the same charges that he pled *nolo contendere* to on November 2, 2007. The Commonwealth and the defense agreed that the minimum sentence would be capped at four and a half years. The Court sentenced the Appellant to a term of imprisonment of no less than 12 months nor more than 24 months for each of the counts of Aggravated Assault, to be run consecutive to each other; no less than 18 months nor more than 36 months of

3

incarceration for the count of Firearms Not to be Carried Without a License, to be run concurrently with the Aggravated Assault charges; no less than 30 months nor more than 60 months for one count of Possession with Intent to Deliver, to be consecutive to the sentences for the counts of Aggravated Assault and Firearms Not to be Carried Without a License. For the second count of Possession with Intent to Deliver, the Appellant was sentenced to a five-year period of probation supervision, consecutive to the other charges.

On July 3, 2008, the Appellant filed a *pro se* Notice of Appeal. On May 17, 2010, the Superior Court of Pennsylvania issued an Opinion affirming this Court's Judgement of Sentence imposed on June 6, 2008. On June 28, 2011, the Supreme Court of Pennsylvania denied the Appellant's Petition for Allowance of Appeal.

On February 3, 2012, the Appellant filed a *pro se* Petition under the Post-Conviction Relief Act. Thereafter, on May 1, 2012, Attorney Michael Wiseman, Esquire entered his appearance.

On October 12, 2012, a PCRA Hearing was held before this Court. At that time, the Court heard testimony from Appellant's former counsel, Attorney Parlow, regarding his representation of the Appellant.

On February 12, 2013, Attorney Wiseman filed a supplement to the pending PCRA petition, which included an allegation of ineffectiveness of prior counsel (Attorney Schiesser) for failing to file a Motion to Suppress. On November 25, 2013, a Hearing was held and the Court heard testimony from Mr. Schiesser. On July 10, 2014, a third PCRA Hearing was held and the Appellant and Detective Ralph Romano, the affiant who filed the original charges, provided testimony to the Court.

On January 2, 2015, Attorney Wiseman filed a Brief in support of the PCRA Petition for this Court's consideration. Despite being represented by experienced

4

counsel, the Appellant filed Amendments to Brief (in support of the PCRA) on January 12, 2015 and January 28, 2015.

On February 3, 2015, the Appellant filed a *pro se* Motion to Terminate Counsel. On February 8, 2015, the Commonwealth filed its Response Brief regarding the PCRA Petition. On April 10, 2010 a Hearing was held with regard to the Motion to Terminate Counsel. At the conclusion of the Hearing, the Court ordered the withdrawal of Attorney Wiseman.[7]

On May 1, 2015, the Appellant filed an additional *pro se* Brief in support of the PCRA Petition. The Commonwealth filed its Response to that Brief on September 1, 2015. The Appellant then filed another Brief for the Court's consideration of his allegations on September 15, 2015. This Court issued an Order and Opinion denying the PCRA Petition on December 2, 2015.

On December 16, 2015, the Court received a copy of the Appellant's *pro se* Notice of Appeal of the December 2, 2016 Order and Opinion of this Court. On December 16, 2015, the Court appointed Attorney Sean Poll, Esquire to represent the Appellant for purposes of an Appeal. On December 29, 2015, the Appellant filed a *pro se* Motion to Proceed *Pro Se* and Other Relief with the Superior Court of Pennsylvania. On January 21, 2016, the Court received a *pro se* Statement of Matters Complained of on Appeal from the Appellant.

Pursuant to *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998), the Court held a Hearing on February 9, 2016 and determined that the Appellant had knowingly, intelligently and voluntarily waived his right to counsel for the instant Appeal. At the Hearing, which the Appellant attended via video conference, the Appellant asserted

---

[7] The Order allowing Attorney Wiseman to withdraw was filed on April 13, 2015.

5

that he wished the Court to consider the Concise Statement he previously filed. Notes of Testimony, Feb. 9, 2016, 7. The Court has done so and this Opinion follows.

## SUMMARY OF THE FACTS

By way of background, the Court reproduces a brief summary of the underlying facts of the case, taken from our December 2, 2015 Order and Opinion:

On February 22nd, 2007, members of the Allentown Police Department were dispatched to the Super 8 Motel, located at 1033 Airport Road, Allentown, Lehigh County, Pennsylvania, for a shooting in process. There, they came across Cameron Fodero and Jeremy Pahula who indicated that they encountered the Defendant in the dumpster area, outside of the Super 8 Motel. Mr. Fodero and Mr. Pahula approached the Defendant and a brief argument ensued. During the course of that questioning and argument, the Defendant produced an automatic weapon from behind his back and pointed the weapon towards the ground, in the direction of Mr. Fodero and Mr. Pahula, and fired several shots. The ricochets from those shots resulted in a cut underneath Mr. Fodero's right eye and Mr. Pahula being struck in the center of his chest, both minor gunshot wounds. Mr. Fodero ran away and the Defendant then ran towards the front of the motel, with Mr. Pahula giving chase. While being chased, the Defendant continued to fire several more shots at Mr. Pahula. Mr. Pahula eventually caught up with the Defendant just in front of the lobby area of the Super 8 Motel and a physical struggle ensued.

Mr. Pahula broke away. During the course of the physical altercation, Mr. Pahula saw a chain lying on the ground and took that in his possession. On his way back to his room, Mr. Pahula yelled to the night clerk that he had been shot. The night clerk also saw the Defendant run by.

A short time later, that same clerk saw the Defendant heading towards the front of the Super 8 Motel, this time having changed his clothes from a sweater to a black muscle shirt. Police units arrived shortly thereafter.

At the direction of the night clerk, the Defendant was taken into custody by Allentown police. Subsequently, a search warrant was obtained for the Defendant's room, Room Number 126. $3,529.00 in US currency was found in the refrigerator, alongside the Defendant's identification. Police found a .40 caliber High Point semi-automatic handgun, which was loaded with three hollow point shells in the magazine and one hollow point shell in the chamber, and male clothing in a tote caddy. Additionally, a backpack

6

was found which contained the Defendant's Social Security card, a certificate from the Department of Education, the Defendant's résumé, and an "owe" sheet. Inside this backpack, police also found 82.5 grams of cocaine and 128 grams of marijuana, variously packaged. Police found several empty glass vials, Inositol (a cutting agent used for the distribution of cocaine), and razors within the room.

It was later determined that the Defendant did not have a license to carry the firearm.

Order/Opin.Denying PCRA Dec. 2, 2015, 5-6.


## DISCUSSION AND CONCLUSIONS OF LAW

Upon review of the Appellant's *pro se* Statement of Matters Complained of on Appeal, it would appear that the Appellant is alleging that the Court erred when it denied the Appellant's PCRA Petition.[8] In short, the Appellant reiterates the arguments he made in his *pro se* PCRA Petition, specifically that trial counsel was ineffective in (1) failing to litigate suppression issues; (2) in his representation at the guilty plea hearing , giving incorrect appellate advice, and failing to meet with the Appellant after sentencing; (3)failing to challenge what transpired at the Preliminary Hearing regarding the agreement between the Commonwealth and the Appellant's counsel; (4) failing to file and litigate Rule 600 motions; and, (5) failing to notify the Court of a letter written by the victim in the underlying case. In addition, the Appellant asserts a sixth allegation of ineffectiveness in his Statement of Matters Complained of on Appeal that counsel[9] was ineffective "for failure to investigate and litigate the issue that the Commonwealth has tampered with the transcripts in this case." Stmnt. Of Matters Complained of on Appeal, Jan.21, 2015, 3.

---

[8] The Court notes that five of the allegations included in the *pro se* Statement of Matters Complained of on Appeal (Paragraphs I through V) are allegations concerning the ineffectiveness of prior counsel (Attorney Schiesser and Attorney Parlow) and are not phrased as allegations of errors made by the Court. However, we believe that it was the intention of the Appellant to argue that the Court erred when we did not agree with the Appellant when he made the same allegations in his *pro se* PCRA.

[9] The Appellant has been represented by at least three different attorneys at various stages of his prosecution. In his Statement, he refers generically to "counsel" in his allegations although clearly the Appellant's assertions apply to specific perceived ineffectiveness.

7

As to the first five allegations of error, the Court relies on its analysis performed in the Order and Opinion dated December 2, 2015 and incorporates it by reference and as Exhibit A to this Opinion. We call particular attention to the Discussion and Conclusions of Law section of the Opinion from page 7 through page 25.

We next respond to the last allegation of the Statement of Matters Complained of on Appeal that counsel was ineffective in failing to investigate and litigate the authenticity of the prepared transcripts. Although the Appellant's reference to "counsel" in this allegation is vague, based on the procedural history of this case and testimony taken of the Appellant at the PCRA Hearing of April 10, 2015, the Court assumes that the allegation is in reference to Attorney Wiseman. By way of background, we note that on January 12, 2015, the Appellant sent this Court a *pro se* Petition for Temporary Waiver of Counsel. In said Petition, the Appellant suggested that PCRA counsel had "omitted some key issues that were contained in petitioners [sic] original PCRA" in his Post-Hearing Brief and that the Appellant "[did] not wish to terminate counsel, but only temporarily waive his representation in respect to the filing of the amendments of the material that counsel has omitted against petitioners' [sic] explicit requests." Pet. For Temp. Waiver of Counsel, rec'd January 12, 2015,1. This Court promptly denied the Petition[10] and the case proceeded.

Thereafter, on February 3, 2015, the Appellant filed a Motion to Terminate Counsel. On February 11, 2015, PCRA Counsel Wiseman sent the Court (and Counsel for the Office of the District Attorney) a Response to the Motion to Terminate. In the Response, Attorney Wiseman suggested that "[c]ounsel and [the Appellant] simply have an honest disagreement over the issues not included in the *Brief*." Counsel Resp.

---

[10] "[T]here is no right of self-representation together with counseled representation ("hybrid representation") at the trial level." *Commonwealth v. Ellis*, 626 A.2d 1137, 1138 (citing *Commonwealth v. Colson*, 507 Pa. 440, 490 A.2d 811 (1985)).

Feb. 10, 2015 at 3. Attorney Wiseman did not object to the Court withdrawing him from representation.

At the Hearing on the Motion to Terminate Counsel, held on April 10, 2015, a representative from the Office of the District Attorney and the Appellant (appearing via video conference) were present. Attorney Wiseman was not present. The Appellant made it clear to the Court that he no longer wished Attorney Wiseman to represent him and the Court withdrew Attorney Wiseman from representation of the Appellant.

> [The Court]. Okay. And sometime thereafter I know that you filed. I don't know if I responded to it. You wanted to supplement the brief. And I guess this was Petition for Temporary Waiver of Counsel. I don't know if I ever responded to that with an order. But, thereafter, you filed a motion to withdraw; is that correct?
> [The Appellant]. Yeah, you did actually respond to the motion. I had attempted to supplement Mr. Wiseman's filing because his brief had waived a lot of issues that we had agreed he would include and I had insisted that he include but he refused to include.
> Once I saw that you denied the supplement, that's when I filed to just terminate my counsel because I knew that that was the only way that I could amend the brief and include those issues that he had waived.
> Q. Okay. So at this point in time, Mr. Christine, we are at a place where you do have the right to have counsel represent you at the PCRA. You have had private counsel represent you.
> Are you choosing to have this counsel withdrawn voluntarily of your own free will?
> A. Yes, I am.
> Q. And do you understand that at this point in time your choices are that you can go forward on your own or you can attempt to engage another attorney?
> A. I understand that. I would like to go forward on my own.
> Q. Okay.
> A. File my own brief.
> Notes of Testimony, April 10, 2015, 8-9.

9

After agreeing that he intended to file a Supplemental Brief for consideration of the PCRA Petition, the Appellant indicated that he believed that there were errors in the Notes of Testimony produced in regard to the June 6, 2008 Guilty Plea Hearing and a Hearing held on July 10, 2014. He further suggested that he verbalized his concerns to Attorney Wiseman while he represented the Appellant. *Id.* at 14. The Court agreed, at the hearing, to review the audio recording of the Hearing and make any corrections necessary, and to inform the Appellant as to what was discovered. At the conclusion of the Hearing, the Appellant was given until April 30, 2015 to submit a Supplemental Brief in support of his PCRA Petition.

On April 16, 2015, the Court compared the audio recordings of the June 6, 2008 and July 10, 2014 Hearings to the Notes of Testimony filed. In fact, a discrepancy was found between the audio recording and the transcription of the June 6, 2008 Hearing. The transcripts were corrected accordingly. No discrepancies were found in the July 10, 2014 Hearing transcription. The Court sent a letter to the Appellant informing him of our findings.

The Appellant did file a Supplemental Brief, dated April 26, 2015. Included in the Supplemental Brief was the Appellant's belief that Attorney Wiseman had submitted an incomplete brief that "omitted issues that were key to defendants [sic] defense." Suppl. Brief, April 26, 2015, 23.

While not addressed in our December 2, 2015 Opinion which denied the *pro se* PCRA Petition, we do not find that Attorney Wiseman was ineffective in failing to include an issue involving the discrepancies of a transcript in his Brief, nor was he ineffective for failing to "litigate the issue that the Commonwealth has tampered with the transcripts in this case." Stmt. Of Matters Complained of on Appeal at 3.

10

To be entitled to relief under the PCRA, the petitioner must establish that "in the circumstances of the particular case, [counsel's ineffectiveness] so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Id.*; see also *Commonwealth v. duPont*, 860 A.2d 525, 531 (Pa.Super.2004) (referring to 42 Pa.C.S. § 9543(a)(2)(ii)). The law presumes that counsel has rendered effective assistance to his client and the petitioner bears the burden of proving the contrary. *Commonwealth v. Copeland*, 554 A.2d 54, 58 (Pa.Super. 1988)(internal citations omitted); *Commonwealth v. Rivers*, 786 A.2d 923, 927 (Pa. 2000). When determining if counsel has been ineffective, the burden is on the petitioner to "prove by a preponderance of the evidence that his conviction or sentence resulted from ineffective assistance of counsel." *duPont* at 531.

"[The Appellate Courts] have interpreted this provision in the PCRA to mean that the petitioner must show: (1) that his claim of counsel's ineffectiveness has merit; (2) that counsel had no reasonable strategic basis for his action or inaction; and (3) that the error of counsel prejudiced the petitioner-i.e., that there is a reasonable probability that, but for the error of counsel, the outcome of the proceeding would have been different." *Id.* at 531 (referring to *Commonwealth v. Kimball*, 724 A.2d 326, 333 (Pa. 1999); *Strickland v. Washington*, 466 U.S. 668, 687, (1984). Furthermore, a claim of ineffectiveness must be rejected if the appellant fails to satisfy any of the prongs. *Commonwealth v. Fitzgerald*, 979 A.2d 908, 910 (Pa.Super. 2009).

At the outset, we reiterate that the Appellant has not had the benefit of formal legal training and is representing himself without the experience of having actually practiced law (in criminal or civil court) in Lehigh County, or any other jurisdiction as far as the Court is aware. It is this lack of actual legal expertise, as opposed to educating oneself on the legal process, which, perhaps, leads the Appellant to this far-

11

fetched argument. For the Appellant's knowledge, it is the **Court Transcriptionist** which certifies the authenticity of the transcript. The Commonwealth plays absolutely no role in the preparation, review, or filing of the notes of testimony. Any mistake made is just that – a mistake in transcription- and not the result of the Commonwealth or its agents "tampering." Attorney Wiseman, being a respected member of the bar and an attorney with considerable experience in the judicial system as well as how notes of testimony are prepared, would not have been successful in pursuing such a claim against the Commonwealth. Because there is no merit in the Appellant's claim against Attorney Wiseman, the Court denied the PCRA Petition in its entirety.

## CONCLUSION

For all of the foregoing reasons, including those included in the December 2, 2015 Order and Opinion attached hereto, we urge the Superior Court to deny and dismiss the instant Appeal.

By the Court:

_Kelly L. Banach_

Kelly L. Banach, J.

12

IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA    )
                               )
              vs.              )        No.:    2002 of 2007
                               )
JACOB CHRISTINE,               )
              Defendant        )

## OPINION

**Kelly L. Banach, J.:**

On February 23, 2007, the Defendant was arrested and charged with two counts of Aggravated Assault[1], one count of Firearms Not to be Carried Without a License[2], two counts of Possession with the Intent to Deliver[3], two counts of Possession of a Controlled Substance[4], and one count of Possession of Drug Paraphernalia[5].[6]

The Defendant, represented by Nathan Bauer Schiesser, Esquire, waived his Preliminary Hearing on May 2, 2007 and was arraigned on the above charges on June 11, 2007. On November 2, 2007, the Defendant pled *nolo contendere* to both counts of Aggravated Assault, Firearms Not to be Carried Without a License, and both counts of Possession with Intent to Deliver. At the time of the *nolo contendere* plea, the Commonwealth agreed to have both counts of Aggravated Assault run concurrently with each other and the remaining counts to run concurrently with each other. The

---

[1] 18 Pa.Con.Stat.Ann. § 2702 (A)(4)
[2] 18 Pa.Con.Stat.Ann. § 6106 (A)(1)
[3] 35 P.S. §780-113 §§ (A)(30)
[4] 35 P.S. §780-113 §§ (A)(16)
[5] 35 P.S. §780-113 §§ (A)(32)
[6] The original charges also included two counts of Attempted Homicide (18 Pa.Con.Stat.Ann. §2501(a)) and two counts of Simple Assault (18 Pa.Con.Stat.Ann. §2701(a)(2)). These charges were withdrawn at the Preliminary Hearing.

2

Commonwealth also agreed to waive the mandatory sentencing provision. A Pre-sentence Investigation Report (PSI) was ordered and sentencing was deferred to December 5, 2007.

Prior to sentencing, the Defendant filed a *pro se* Motion to Modify or Withdraw his *nolo contendre* plea. After a hearing, the Motion was granted, the *nolo contendere* plea was withdrawn, and a Bail Hearing was scheduled for December 10, 2007.

On December 28, 2008, Mr. Schiesser filed a Petition to Withdraw as Counsel. Without opposition from the Defendant and no opinion expressed by the Commonwealth, the Court granted the Petition on January 3, 2008.

On January 23, 2008, the Defendant's new counsel, Michael K. Parlow, Esquire filed a pre-trial discovery request. On February 15, 2008, an Omnibus Pretrial Motion (OPTM) was filed on the Defendant's behalf. In response to this Motion, the Commonwealth filed a Motion to Quash the Defendant's Omnibus Pretrial Motion because the OPTM was not timely filed by the Defendant. On February 20, 2008, the Court dismissed the OPTM. On March 25, 2008, the Defendant filed a Motion for Reconsideration of Denial of Suppression Motion. The Matter was set for Hearing and Status Conference on April 23, 2008. On that date, the Motion for Reconsideration was abandoned and a trial date of June 9, 2008 was set.

On June 6, 2008, the Defendant entered a guilty plea to the same charges that he pled *nolo contendere* to on November 2, 2007. The Commonwealth and the defense agreed that the minimum sentence would be capped at four and a half years. The Court sentenced the Defendant to a term of imprisonment of no less than 12 months nor more than 24 months for each of the counts of Aggravated Assault, to be run consecutive to each other; no less than 18 months nor more than 36 months of incarceration for the count of Firearms Not to be Carried Without a License, to be run

concurrently with the Aggravated Assault charges; no less than 30 months nor more than 60 months for one count of Possession with Intent to Deliver, to be consecutive to the sentences for the counts of Aggravated Assault and Firearms Not to be Carried Without a License.  For the second count of Possession with Intent to Deliver, the Defendant was sentenced to a five-year period of probation supervision, consecutive to the other charges.  . . .

On July 3, 2008, the Defendant filed a *pro se* Notice of Appeal.  On May 17, 2010, the Superior Court of Pennsylvania issued an Opinion affirming this Court's Judgement of Sentence imposed on June 6, 2008.  On June 28, 2011, the Supreme Court of Pennsylvania denied the Defendant's Petition for Allowance of Appeal.

On February 3, 2012, the Defendant filed a *pro se* Petition under the Post-Conviction Relief Act.  Thereafter, on May 1, 2012, Attorney Michael Wiseman, Esquire entered his appearance.

On October 12, 2012, a PCRA Hearing was held before this Court.  At that time, the Court heard testimony from Defendant's former counsel, Attorney Parlow, regarding his representation of the Defendant.

On February 12, 2013, Attorney Wiseman filed a supplement to the pending PCRA petition, which included an allegation of ineffectiveness of prior counsel (Attorney Schiesser) for failing to file a Motion to Suppress.  On November 25, 2013, a Hearing was held and the Court heard testimony from Mr. Schiesser.  On July 10, 2014, a third PCRA Hearing was held and the Defendant and Detective Ralph Romano, the affiant who filed the original charges, provided testimony to the Court.

On January 2, 2015, Attorney Wiseman filed a Brief for this Court's consideration.  Despite being represented by experienced counsel, the Defendant filed

4

Amendments to Brief (in support of the PCRA) on January 12, 2015 and January 28, 2015.

On February 3, 2015, the Defendant filed a *pro se* Motion to Terminate Counsel. On February 8, 2015, the Commonwealth filed its Response Brief regarding the PCRA Petition. On April 13, 2015, the Court filed an Order withdrawing Attorney Wiseman from representation of the Defendant.

On May 1, 2015, the Defendant filed yet another *pro se* Brief in support of the PCRA Petition. The Commonwealth filed its Response to the latest Brief on September 1, 2015. The Defendant filed at least the fourth Brief for the Court's consideration of the Defendant's allegations on September 15, 2015.

## BRIEF STATEMENT OF THE FACTS OF THE UNDERYLYING CASE[7]

On February 22nd, 2007, members of the Allentown Police Department were dispatched to the Super 8 Motel, located at 1033 Airport Road, Allentown, Lehigh County, Pennsylvania, for a shooting in process. There, they came across Cameron Fodero and Jeremy Pahula who indicated that they encountered the Defendant in the dumpster area, outside of the Super 8 Motel. Mr. Fodero and Mr. Pahula approached the Defendant and a brief argument ensued. During the course of that questioning and argument, the Defendant produced an automatic weapon from behind his back and pointed the weapon towards the ground, in the direction of Mr. Fodero and Mr. Pahula, and fired several shots. The ricochets from those shots resulted in a cut underneath Mr. Fodero's right eye and Mr. Pahula being struck in the center of his chest, both minor gunshot wounds. Mr. Fodero ran away and the Defendant then ran towards the front of the motel, with Mr. Pahula giving chase. While being chased, the Defendant continued to fire several more shots at Mr. Pahula. Mr. Pahula eventually

---

[7] The following recitation of the facts of the underlying case is taken from this Court's Opinion, dated September 9, 2008.

5

caught up with the Defendant just in front of the lobby area of the Super 8 Motel and a physical struggle ensued.

Mr. Pahula broke away. During the course of the physical altercation, Mr. Pahula saw a chain lying on the ground and took that in his possession. On his way back to his room, Mr. Pahula yelled to the night clerk that he had been shot. The night clerk also saw the Defendant run by.

A short time later, that same clerk saw the Defendant heading towards the front of the Super 8 Motel, this time having changed his clothes from a sweater to a black muscle shirt. Police units arrived shortly thereafter.

At the direction of the night clerk, the Defendant was taken into custody by Allentown police. Subsequently, a search warrant was obtained for the Defendant's room, Room Number 126. $3,529.00 in US currency was found in the refrigerator, alongside the Defendant's identification. Police found a .40 caliber High Point semi-automatic handgun, which was loaded with three hollow point shells in the magazine and one hollow point shell in the chamber, and male clothing in a tote caddy. Additionally, a backpack was found which contained the Defendant's Social Security card, a certificate from the Department of Education, the Defendant's résumé, and an "owe" sheet. Inside this backpack, police also found 82.5 grams of cocaine and 128 grams of marijuana, variously packaged. Police found several empty glass vials, Inositol (a cutting agent used for the distribution of cocaine), and razors within the room.

It was later determined that the Defendant did not have a license to carry the firearm.

## DISCUSSION AND CONCLUSIONS OF LAW

Claims of ineffective assistance of counsel are cognizable under the PCRA. See 42 Pa.C.S.A. § 9543 (a)(2)(ii). To be entitled to relief, the petitioner must establish that "in the circumstances of the particular case, [counsel's ineffectiveness] so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Id.*; see also *Commonwealth v. duPont*, 860 A.2d 525, 531 (Pa.Super.2004) (referring to 42 Pa.C.S. § 9543(a)(2)(ii)). The law presumes that counsel has rendered effective assistance to his client and the petitioner bears the burden of proving the contrary. *Commonwealth v. Copeland*, 554 A.2d 54, 58 (Pa.Super. 1988)(internal citations omitted); *Commonwealth v. Rivers*, 786 A.2d 923, 927 (Pa. 2000). When determining if counsel has been ineffective, the burden is on the petitioner to "prove by a preponderance of the evidence that his conviction or sentence resulted from ineffective assistance of counsel." *duPont* at 531.

"[The Appellate Courts] have interpreted this provision in the PCRA to mean that the petitioner must show: (1) that his claim of counsel's ineffectiveness has merit; (2) that counsel had no reasonable strategic basis for his action or inaction; and (3) that the error of counsel prejudiced the petitioner-i.e., that there is a reasonable probability that, but for the error of counsel, the outcome of the proceeding would have been different." *Id.* at 531 (referring to *Commonwealth v. Kimball*, 724 A.2d 326, 333 (Pa. 1999); *Strickland v. Washington*, 466 U.S. 668, 687, (1984). Furthermore, a claim of ineffectiveness must be rejected if the appellant fails to satisfy any of the prongs. *Commonwealth v. Fitzgerald*, 979 A.2d 908, 910 (Pa.Super. 2009). If the petitioner is unable to demonstrate prejudice, the first two prongs of the ineffective examination need not be addressed. *Commonwealth v. Chmiel*, 889 A.2d 501, 540 (Pa. 2005). In that case, "the claim may be disposed of on that basis alone, without a

7

determination of whether the first two prongs have been met." *Commonwealth v. Wilson*, 672 A.2d 293, 298 (Pa. 1996).

The Defendant alleges the following in his *pro se* PCRA Petition:

I.    Claims with Regard to Attorney Schiesser
   a. Attorney Schiesser was ineffective at the time of the Preliminary Hearing because he allowed or encouraged the Defendant to waive his Preliminary Hearing;
   b. Attorney Schiesser was ineffective when he failed to file and/or litigate suppression issues;
   c. Attorney Schiesser was ineffective when he failed litigate a Nominal Bail Motion;

II.   Claims with Regard to Attorney Parlow
   a. Attorney Parlow was ineffective by failing to file a Post-Sentence Motion to withdraw the Defendant's *nolo contendre* plea;
   b. Attorney Parlow was ineffective when he provided incorrect information to the Defendant regarding the Defendant's later ability on appeal to challenge Attorney Schiesser's failure to file pretrial motions;
   c. Attorney Parlow was ineffective by failing to appear at the Reconsideration Hearing;
   d. Attorney Parlow was ineffective by failing to meet with the Defendant after sentencing;
   e. Attorney Parlow was ineffective by failing to challenge the agreement between the Commonwealth and the Defendant at the time of the Preliminary Hearing;
   f. Attorney Parlow was ineffective by failing to litigate a Nominal Bail Motion;
   g. Attorney Parlow was ineffective by failing to notify the Court regarding a letter written by the victim in the underlying case;
   h. Attorney Parlow was ineffective because he coerced the Defendant to plead guilty with a promise of the return of the Defendant's jewelry;
   i. Attorney Parlow was ineffective by failing to advising him of the possibility of consecutive probation.

III.  The Court erred in refusing to grant the Defendant discovery as it related to the prison conditions he was subject to following his guilty plea.

INEFFECTIVENESS OF ATTORNEY SCHIESSER

The Defendant claims that Attorney Schiesser was ineffective in failing to file a Motion to Suppress prior to the Defendant's *nolo contendre* plea in November of 2007. Additionally, the Defendant asserts that he maintained his innocence throughout Attorney Schiesser's representation and that he continuously requested that Attorney Schiesser file a Motion to Suppress. He argues that there was no agreement regarding

8

his waiver of his Preliminary Hearing and that Attorney Schiesser pressured him to waive his Preliminary Hearing and to ultimately enter the *nolo contendre* plea.

The Court heard testimony from Attorney Schiesser regarding his recollection of his representation of the Defendant. Attorney Schiesser testified that he became involved in the case shortly after the Defendant's arrest. On the date of the Preliminary Hearing, May 2, 2007, Attorney Schiesser spoke with the Assistant District Attorney assigned to the case and negotiated a plea agreement. Specifically, the Commonwealth agreed to withdraw the two Attempted Homicide charges in exchange for the Defendant waiving his Preliminary Hearing and agreeing to enter a guilty plea. Further, the Commonwealth agreed to have the sentences imposed in the Aggravated Assault charges run concurrently and that the drug charges would run concurrently, although no agreement was made regarding the two groups of charges and concurrency. Attorney Schiesser testified that he discussed the agreement prior to the Defendant waiving the Preliminary Hearing, most likely on the same day. The Defendant appeared to Attorney Schiesser to be agreeable to the negotiated disposition at the time.

When the time came for the Defendant to enter his guilty plea, the Defendant changed his mind and wanted to plead *nolo contendre* instead. The Defendant told Attorney Schiesser that he did not want to admit what he did, but gave no further explanation. After the *nolo contendre* plea was entered, the Defendant terminated Attorney Schiesser's representation on the date of the Sentencing Hearing. It was at that point that the Defendant stated that he wished to file a suppression motion.

At the PCRA Hearing on November 25, 2013, Attorney Schiesser testified that during his representation of the Defendant, he always believed that the case was to result in a guilty plea disposition and that the negotiated plea agreement was

9

appropriate. Attorney Schiesser testified that he evaluated the facts of the case and determined that his client would not prevail on any pretrial motion and that filing a Pretrial Motion was meritless. He further stated that it was his understanding at the time that if a Pretrial Motion was litigated, that the negotiated plea agreement (from the time of the Preliminary Hearing) would be withdrawn by the Commonwealth. Not filing Pretrial Motions was part of the defense strategy to keep the negotiated plea agreement in place.

We cannot agree that the failure to file a Motion to Suppress constituted ineffective assistance of counsel. First, we find that Attorney Schiesser's determination that Pretrial Motions were not necessary or in the best interest of his client and the negotiated plea under consideration was clearly part of a reasonable defense strategy. "It is well-established that where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." *Commonwealth v. Smith*, 17 A.3d 873, 888 (citations omitted). "A finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Id.* (citations omitted). The negotiated plea agreement involved both the charges to be pursued by the Commonwealth, as well as sentencing agreements, indicating that both parties understood that a non-trial disposition was contemplated. Additionally, Attorney Schiesser recalled that had he litigated a Pretrial Motion, the advantageous negotiated guilty plea would be taken away by the Commonwealth.

Second, the Defendant is unable to show that had the Suppression Motion been filed, that it would be meritorious. The Defendant alleges that the search

10

warrant executed in this case was insufficient and therefore, any resulting evidence seized ought to have been suppressed. "[B]efore inquiring into the basis for trial counsel's failure to file a suppression motion, we must determine whether the claim which counsel is charged with failing to pursue was a frivolous one." *Commonwealth v. Gaston*, 378 A.2d 297, 299 (Pa. 1977). In the instant case, this Court must determine if the search warrant and the affidavit contained therein was valid.

"In determining whether a search warrant is supported by probable cause, appellate review is confined to the four corners of the affidavit. Probable cause, in turn, is a practical, non-technical concept which requires consideration of the totality of the circumstances." *Commonwealth v. Galvin*, 985 A.2d 783, 796 (Pa. 2009)(citing *Commonwealth v. Coleman*, 830 A.2d 554, 560 (Pa. 2003)). The Court will consider whether the issuing authority correctly determined "given all of the facts and circumstances provided in the affidavit, including the veracity and basis of knowledge of the persons supplying hearsay information, [that] there is a fair probability that contraband or evidence of a crime will be found in a certain locale." *Id.* "It must be remembered that probable cause is based on a finding of the probability of criminal activity, not a *prima facie* showing of criminal activity." *Commonwealth v. Luton*, 672 A.2d 819, 822 (Pa.Super. 1996)(citing *Commonwealth v. Baker*, 615 A.2d 23, 25 (Pa. 1992)).

The four corners of the search warrant, and a reading of the facts and circumstances provided in the affidavit, demonstrate a "fair probability that contraband or evidence of a crime" would be found in Room 126 of the Super 8 Motel. Specifically, the affidavit alleges that Allentown Police were summoned to the Super 8 for a report of a shooting. Shell casings were discovered outside of the Super 8 and two victims identified the Defendant as the person who shot at them. The Defendant

11

was stopped while he was attempting to flee the Super 8 and it was determined that the Defendant was staying in Room 126. Because the affidavit "must be viewed in a common sense, non-technical manner," we find that there was sufficient *prima facie* evidence that contraband or evidence of criminal activity would be found in the location to be searched. We find that had the Motion to Suppress been pursued, it would not have been successful and therefore, Attorney Schiesser was not ineffective for failing to file such a Motion.

We also find no merit in the Defendant's assertion that because the warrant was served at night without a demonstration that a nighttime search was reasonably necessary, it ought to be suppressed. Even if no demonstration had been made, a technical violation of Pa.R.Crim.Pro. 203 (E) does not warrant suppression of the evidence. See *Commonwealth v. Lyons*, 79 A.3d 1053, 1065 n.9 (Pa.2013); and, *Commonwealth v. Johnson*, 462 A.2d 743, 747 (Pa.Super. 1983)("A rule of exclusion is properly employed where the objection goes to the question of the reliability of the challenged evidence, or reflects intolerable government conduct which is widespread and cannot otherwise be controlled.")

Likewise, we find no merit in the Defendant's argument regarding the suppression of controlled substances found within a backpack in Room 126. "[W]here a search warrant adequately describes the place to be searched and the items to be seized the scope of the search 'extends to the entire area in which the object of the search may be found and properly includes the opening and inspection of containers and other receptacles where the object may be secreted.'" *Commonwealth v. Watson*, 724 A.2d 289, 292 (citing *Commonwealth v. Reese*, 549 A.2d 909, 911 (Pa. 1988)). The warrant identified "any and all firearms" as the items to be seized. Because firearms are movable and are easily secreted in items such as a backpack, officers searching

12

Room 126 pursuant to the issued search warrant were permitted to look inside of a backpack within the room. Having determined that the search warrant was valid and that the police were permitted to search Room 126 and its contents, we find that the seizure of the controlled substances was proper pursuant to the plain view doctrine. See *Commonwealth v. Anderson*, 40 A.3d 1245, 1249 (Pa.Super. 2012).[8]

Finally, the Defendant asserts that Attorney Schiesser was ineffective in his representation when he failed to file a Nominal Bail Motion. Pa.R.Crim.Pro. 600 (B) and (C) provide "Except in cases in which the defendant is not entitled to release on bail as provided by law, no defendant shall be held in pretrial incarceration in excess of 180 days from the date on which the complaint is filed.... [P]eriods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation."

In the instant matter, the Criminal Complaint was filed (and the Defendant was taken into custody) on February 23, 2007. He was arraigned on June 11, 2007 (108 days). The Defendant requested a continuance of the status conference at that time. The defendant was next in Court on August 14, 2007. At that point, the Commonwealth requested a continuance. The case was then listed for September 7, 2007 (total of 132 days). At that time, the Defendant again requested time to consider the plea offer made by the Commonwealth. The Defendant entered his first plea on November 7, 2007 and only 132 days had elapsed. At that time, and while Mr.

---

[8] "The plain view doctrine provides that evidence in plain view of the police can be seized without a warrant. . . . The plain view doctrine applies if 1) police did not violate the Fourth Amendment during the course of their arrival at the location where they viewed the item in question; 2) the item was not obscured and could be seen plainly from that location; 3) the incriminating nature of the item was readily apparent; and 4) police had the lawful right to access the item." *Anderson* at 1249, internal citations omitted.

13

Schiesser still represented the Defendant, a Rule 600 Motion was baseless because 180 days had not yet passed. Again, because Mr. Schiesser cannot be found ineffective for failing to file a meritless motion, the Defendant's allegations again fail.

Because we find that Attorney Schiesser's failure to file a Motion to Suppress and/or a Motion for Bail pursuant to Rule 600 did not render his service ineffective for the above-stated reasons, the Defendant's PCRA Petition as it pertains to Attorney Schiesser's representation must fail.

### INEFFECTIVENESS OF ATTORNEY PARLOW

We begin by considering the Defendant's allegation that Attorney Parlow was ineffective by failing to challenge the agreement between the Commonwealth and the Defendant at the time of the Preliminary Hearing. We find this accusation without merit. At the time he withdrew his *nolo contendre* plea, the Court clearly informed the Defendant that all prior negotiated deals between the Commonwealth and the defense were no longer in play, given that he had withdrawn the *nolo contendre* plea. The Defendant accepted that and still continued with the withdrawal of the *nolo contendre* plea.

The Defendant asserts that Attorney Parlow was ineffective when he permitted the Defendant to enter a guilty plea knowing that the Defendant believed he had acted in self-defense. At the time of the guilty plea, the Defendant acknowledged his actions on the record:

> THE COURT: Are you pleading guilty to all of these crimes and I will outline them again for you, two counts of aggravated assault, one count of firearms not to be carried without a license, one count of possession with intent to deliver cocaine, one count of possession with intent to deliver marijuana? Are you pleading guilty to all of those charges because you are, in fact, guilty of them?
>
> MR. CHRISTINE: Yes, I am.

N.T. 6/6/08, 39-40.

14

By acknowledging his criminal acts, and agreeing to plead guilty, any and all defenses to the criminal activity alleged are moot. Had he wished to assert the defense, the Defendant should have put aside the negotiated plea agreement and offers from the Commonwealth and gone to trial. We will not find Attorney Parlow ineffective based on this allegation.

The Defendant alleges that Attorney Parlow coerced him to plead guilty by failing to notify the Court of a letter which the Defendant perceived to be threatening from one of the victims, by making a promise that the Defendant's jewelry would be returned, and/or by failing to advise the Defendant of the possibility of consecutive probation. To determine whether the guilty plea was knowingly, intelligently, and voluntarily made, we look to the transcript of the June 6, 2008 guilty plea and sentencing. At the outset of the guilty plea, the Court advised[9] the Defendant regarding the criminal charges and possible penalties he was facing, including the possible maximum sentences.

> THE COURT: Okay. We'll give it a try. Mr. Christine, you and I have gone down this road before.
>
> MR. CHRISTINE: Yes.
>
> THE COURT: But it's necessary for me to make a new and separate record. So, we have to act as if we haven't done it before. Some things we might be able to short cut just a little bit, but I need to make a record and again, I need to be assured that you understand everything that is going on and that you -- the purpose of the colloquy, which is the question and answer thing, is I need to be convinced that this is a knowing and voluntary guilty plea. So you know what you are doing and you are doing it of your own free will. So, that's why I ask all these questions.
>
> MR. CHRISTINE: I understand.

***

_____

[9] The Court had previously described the crimes and possible penalties to the Defendant during the course of his first _nolo contendre_ plea while represented by Attorney Schiesser.

15

THE COURT: Okay. Then let's go over the charges, again, we've done this once before, but we've had some lapse of time. There are two counts of aggravated assault. I believe these counts are that you caused serious bodily injury to another person with a deadly weapon.

[SENIOR DEPUTY DISTRICT ATTORNEY] BERNARDINO: Bodily injury.

THE COURT: Bodily injury with a deadly weapon.

MR. BERNARDINO: Yes, Judge.

THE COURT: Okay. And again, two separate victims. So, you intentionally caused bodily injury to two other people with a deadly weapon. And a deadly weapon can be almost anything that can cause death, quite frankly. But surely, guns and knives are in that category without any reservation. Do you understand the crime of aggravated assault?

MR. CHRISTINE: Yes.

THE COURT: They are both graded as felonies of the second degree, which means they have maximum possible penalty of up to ten years in prison and/or $25,000.00 in fines. Do you understand?

MR. CHRISTINE: Yes.

***

THE COURT: All right. The other charge is firearms not to be carried without a license. You may own a firearm, you may carry it around, believe it or not, in the presence of other people, in an open and notorious fashion, but if you want to conceal it on your person or carry it in a closed vehicle, you have to have a license to do that. If you don't have a license to do that, you are considered to be in violation of this section of the Crimes Code. That's graded as a felony of the third degree, it has a maximum possible penalty of up to seven years in prison and/or $15,000.00 in fines. Do you understand that crime and that penalty?

MR. CHRISTINE: I understand that crime, too.

THE COURT: Okay. And we have one count of -- or, I'm sorry, two counts of possession with intent to deliver a controlled substances. Controlled substances are substances that the law says you are not permitted to have.

16

These substances are marijuana and cocaine. And possession with intent to deliver means that you had these two substances in such quantities and/or other circumstances such that it would be reasonable for me to conclude that your purpose was not to have them for personal use, but rather to deliver them, meaning, to give or sell them to another person. That could mean that there was a tremendous quantity or that there was a particular quantity, but it was packaged in a certain way. It could mean that it was in combination with packaging materials, lots of money, customer lists, it could mean that you had it without any kind of use paraphernalia, so, it didn't appear that you were intending to use it all. So, those are some of the factors that contribute to proof of possession with intent to deliver. Do you understand?

MR. CHRISTINE: Yes.

THE COURT: Okay. Both of those are felonies and I think there's some distinction or not -- yes, for the possession with intent to deliver cocaine, it's up to ten years in prison and/or $100,000.00 in fines. For marijuana, five years in prison and/or $15,000.00 fines.

MR. CHRISTINE: I understand.

Notes of Testimony, June 6, 2008, p. 5-6; 9-10;13-15.

THE COURT: It's explained to me, Mr. Christine, that you are going to plead guilty to five different counts of the information. They address four different crimes. And as I recall, there were two separate victims here. The agreement is that you will receive a four and a half year minimum sentence for those crimes, the maximum will be up to my discretion. Is that your understanding of the agreement?

MR. CHRISTINE: I understand that.

*Id.* at 8-9.

In addition to the answers to the Court's questions, the Appellant also executed a written guilty plea colloquy. The Court went over this document with the Appellant:

THE COURT: Okay. Once again, we asked you to go over this guilty plea colloquy. Did you go through this document carefully?

MR. CHRISTINE: Yes, we did.

17

THE COURT: Can you tell me, Mr. Christine, who actually marked the answers to the questions?

MR. CHRISTINE: That was me.

THE COURT: Did you answer the questions truthfully?

MR. CHRISTINE: Yes.

THE COURT: Yes?

MR. CHRISTINE: Yes, I did.

THE COURT: Okay. Do you have any questions about this document or about the rights that you're giving up?

MR. CHRISTINE: Nope.

THE COURT: Are you sure?

MR. CHRISTINE: No, ma'am.

THE COURT: It says you're presently on probation or parole, were you on probation or parole at the time this offense was committed?

MR. CHRISTINE: No.

THE COURT: Okay. Near the end, we ask for your signature, is that your signature?

MR. CHRISTINE: Uh, huh.

THE COURT: Again, that tells me that you did understand all of the questions and you did answer them all truthfully. Is that right?

MR. CHRISTINE: Yes, it is.

*Id.* at 20-22:9-5.

From the testimony taken at the Guilty Plea, and upon consideration of the Defendant's answers to the verbal questions as well the written colloquy, it is clear that the Defendant was well aware of what the crimes were that he was pleading guilty to and what he could potentially receive in terms of sentencing. Therefore, the current

18

allegations of coercion are completely without substantiation in the record. The Defendant's allegations of Attorney Parlow's ineffectiveness in this regard are without merit.

Next, the Defendant asserts that Attorney Parlow was ineffective in that he failed to file Post-Sentence Motions and/or a Notice of Appeal following the Defendant's negotiated guilty plea on June 6, 2008. The Court heard testimony from Attorney Parlow on October 12, 2012. Attorney Parlow indicated that following the entry of the guilty plea and the sentencing hearing, the Defendant no longer wished for Attorney Parlow's representation, although Attorney Parlow could not recall how he was informed of the Defendant's decision. Further, the Defendant had indicated to Attorney Parlow that he wished to pursue his appeal on his own. In response, Attorney Parlow sent the Defendant information regarding how he could exercise his appeal rights (Defense Exhibit 8, 10/12/12). [10] Defense Exhibit 5 (a memo to the Attorney Parlow's working file) indicated that Attorney Parlow advised the Defendant that the only issue on appeal would be the effectiveness or ineffectiveness of Attorney Parlow, and perhaps Attorney Schiesser, although Attorney Parlow indicated that he believed that claim to be without merit.

Pursuant to R.Crim.Pro. 120, "[a]n attorney who has been retained or appointed by the court shall continue such representation through direct appeal or until granted leave to withdraw by the court." "Where a defendant does not ask his attorney to file a direct appeal, counsel still may be held ineffective if he does not

[10] At the October 12, 2012 Hearing, Attorney Parlow appeared in response to a subpoena. He brought the contents of his case file. The Defendant's counsel at the time, Attorney Wiseman, requested access to Attorney Parlow's file, but Attorney Parlow objected to turning that file over. Therefore, the Court accepted the contents of the file and determined which of the items Attorney Wiseman was entitled to. By Order, dated October 9, 2014, the Court accepted Defense Exhibits 5 through 15 to be admitted into evidence and provided copies to Attorney Wiseman and the Commonwealth.

19

consult with his client about the client's appellate rights. Such ineffectiveness, however, will only be found where a duty to consult arises either because there were issues of merit to raise on direct appeal or the defendant, in some manner, displayed signs of desiring an appeal." *Commonwealth v. Markowitz*, 32 A.3d 706, 714 (Pa.Super. 2011).

The Defendant is unable to demonstrate that he did, in fact, inform Attorney Parlow that he desired to file Post-Sentence Motions or to appeal either his guilty plea or his sentence. Rather, the Court finds persuasive Attorney Parlow's recollection of events following the sentencing hearing and finds that Exhibits 5 (the memo to the file) and 8 (letter sent to the Defendant regarding appeal information) corroborate his recollection. Specifically, Exhibit 8 directs the Defendant to contact Attorney Parlow should he have questions or for more information. In addition, it is uncontroverted that following the sentencing hearing, the Defendant no longer wished to have Attorney Parlow represent him.

Additionally, Attorney Parlow was not required to file an appeal because no issues of merit existed. The Defendant's guilty plea was knowing and voluntary, and the sentence issued was legal and without abuse of discretion. We recall that on July 3, 2008, the Defendant filed a *pro se* Notice of Appeal which contained allegations of error regarding the guilty plea and sentencing. Specifically, the Defendant alleged that that he was unaware of the true penalties for the charges he pled guilty to and that he was coerced into pleading guilty because (a) counsel informed him that he would have his personal belongings (specifically the gold chain and pendent) returned as a condition of the guilty plea; (b) he was given chocolate by the Court; (c) he became concerned about his mother's health; (d) he did not have witnesses, proper trial clothing, and a haircut for trial; (e) he presumed that Mr. Parlow would impose

additional fees if he elected to go to trial; and, (f) he allegedly received threats made by one of the victims in the case. This Court wrote a detailed opinion regarding the Defendant's allegations. On May 17, 2010 the Pennsylvania Superior Court affirmed, finding that the Defendant had waived these issues because he failed to raise these challenges regarding his guilty plea in the lower court. However, the Superior Court did state, "[e]ven were we able to address the merits of [the Defendant's] challenges to his guilty plea, we would not hesitate to find these arguments to be without merit." *Commonwealth v. Christine,* 2039 EDA 2008, 6 n.2, May 17, 2010). Because the Defendant's challenges to the guilty plea were without merit, failing to file a meritless appeal cannot render Attorney Parlow's representation ineffective.

Likewise, Attorney Parlow was not obligated to file an appeal or post-sentence motion because a challenge to the sentence imposed was without merit. At the time of the guilty plea, the Commonwealth and the defense agreed that the minimum sentence would be capped at four and a half years. The Court sentenced the Appellant to pay the costs of prosecution and to a term of imprisonment of no less than 12 months nor more than 24 months for each of the counts of Aggravated Assault, to be run consecutive to each other; no less than 18 months nor more than 36 months for the count of Firearms Not to be Carried Without a License, to be run concurrently with the Aggravated Assault charges; no less than 30 months nor more than 60 months for one count of Possession with Intent to Deliver, to be consecutive to the sentences for the counts of Aggravated Assault and Firearms Not to be Carried Without a License. For the second count of Possession with Intent to Deliver, the Appellant was sentenced to a five-year period of probation supervision, consecutive to the other charges. The sentence imposed fell within the plea agreement and did not

21

violate the statutory maximums. Therefore, only the discretionary aspects of the sentence could have been challenged via a Post Sentence Motion.

"An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Commonwealth v. Smith,* 673 A.2d 893, 895 (Pa. 1996)(internal citations omitted). A sentencing court is entitled to consider the totality of circumstances when making its decision. Here, the Court had an opportunity to review a presentence investigation report prepared by the Lehigh County Probation and Parole Department in anticipation of sentencing.[11] In addition, the Court was provided a copy of the Defendant's institutional misconduct and letters that the Defendant had sent to the Court. The Defendant, his mother, and his counsel gave argument at the time of sentencing as well. Given the totality of the circumstances including the Defendant's prior criminal history, the violent nature of the crime, the risk to others as well as the Defendant, and the Court's need to protect the community from future similar behavior, the sentence imposed was not manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. Therefore, had the Defendant indeed appealed the discretionary aspects of his sentence either by filing a Post-Sentence Motion or via appeal, his allegations would be without merit. Again, Attorney Parlow cannot be found ineffective for failing to file Motions or an appeal which was both unrequested and without merit.

Next, the Defendant alleges that Attorney Parlow was ineffective in the information he provided the Defendant regarding his ability to challenge Attorney

---

[11] The PSI was prepared following the *nolo contendre* plea and was utilized for the sentencing following the ultimate guilty plea on June 6, 2008. Mr. Parlow and the Defendant had an opportunity to review the PSI prior to sentencing.

22

Schiesser's failure to file a Motion to Suppress. As stated at length above, we do not find that Attorney Schiesser's representation was ineffective in this regard, and therefore, the Defendant is unable to satisfy the prejudice prong of the *Strickland* test. As such, this claim of ineffectiveness is also without merit.

The Defendant next alleges that Attorney Parlow was ineffective in failing to appear at the Reconsideration Hearing regarding the Court's denial of the untimely filed Motion to Suppress. For the reasons stated above in the Court's discussion of the merits regarding the challenge to the search warrant, even had Attorney Parlow appeared at the hearing and even if the Court had agreed to entertain the untimely Motion to Suppress, ultimately the Motion to Suppress would have been denied. Therefore, the Defendant cannot satisfy the prejudice prong of the *Strickland* test for ineffectiveness.

The Defendant claims that Attorney Parlow was ineffective because he did not meet with him after sentencing. After a discussion following the entry of the guilty plea and following the imposition of the sentence, the Court reiterated the Defendant's post-sentence and appellate rights to the Defendant. Further, although he indicated that he wished to speak with his attorney, the Defendant indicated that he was in the Restricted Housing Unit ("the hole"). The following exchange occurred:

> THE COURT: Okay. Now, I can have you remain here for ten days, I can have you remain here for thirty days.
>
> MR. CHRISTINE: Remain in Lehigh County?
>
> THE COURT: Yes.
>
> MR. CHRISTINE: I'm in the hole right now. I really can't do –
>
> THE COURT: Well, you should be able to communicate with your attorney for purposes of the appeal.
>
> MR. CHRISTINE: Okay. I would choose to remain.

23

THE COURT: To remain for thirty days? But my -- this doesn't trump your -- you are here and you have days that you owe them in the hole, that's where you stay. If I send you within ten days then you just go.

MR. CHRISTINE: Does it take a long time to go up anyway?

THE COURT: No, they would probably take you next week if I didn't keep you here.

MR. CHRISTINE: So, me –

MR. PARLOW: We discussed this before, Judge, and -- I told him how to get in contact with me. He wants to go up.

THE COURT: All right. Then I am not going to order anything with regard to -- whenever they get a ride going?

MR. PARLOW: Yes.

THE COURT: As we say, on the bus. Okay.

N.T. 6/6/08 at 63-65.

From this excerpt it is clear that the Defendant wished to be transported to the state facility without delay and that he had been previously made aware of the method in which he could get ahold of Attorney Parlow to have him file additional paperwork. The Defendant never contacted Attorney Parlow. For reasons stated above, because the Defendant never contacted Attorney Parlow to file the Post-Sentence Motions or to file a Notice of Appeal, and because those items are without merit, Attorney Parlow was under no obligation to file those documents. Without the obligation, he cannot be considered to be ineffective.

The Defendant also argues that Attorney Parlow was ineffective for failing to file a Rule 600 Motion. As stated in the previous section, at the time the Defendant entered his first *nolo contendre* plea on November 7, 2007, only 132 days had elapsed. The Defendant then withdrew the *nolo contendre* plea on December 5, 2007. Pursuant to Pa.R.Crim.Pro. 600 (B)(4), the Commonwealth had 120 days from December 5, 2007, to bring the Defendant to trial. Omnibus Pretrial Motions were then filed on

24

February 15, 2008, which stopped the calculation at 73 days. The OPTM was dismissed on February 20, 2008, which again started the calculation of time. A Motion for Reconsideration of the OPTM was filed on March 28, 2008, which again stopped the calculation of time. At that point, 110 days had passed. On March 31, 2008, defense counsel requested a continuance and the case was rescheduled to April 23, 2008. On April 23, 2008, the Court denied the Motion for Reconsideration and set a trial date of June 9, 2008 based on the availability of the Court. The ultimate guilty plea was taken on June 6, 2008. Based on the excludable time and the calculations above, any Rule 600 Motion for Nominal Bail would be meritless and the Defendant's allegations of ineffectiveness based on Attorney Parlow's failure to file such a motion fails.

## COURT'S ERROR IN REFUSING DISCOVERY

The Defendant alleges that he is entitled to discovery related to the prison conditions as they existed at the time period following his entry of his guilty plea due to the fact that those conditions affected his ability to file timely post-sentence motions. He avers that he was housed in the Restrictive Housing Unit ("the hole") and due to that status, he had no access to writing materials to timely file a *pro se* post-sentence motion.

As we noted in our September 4, 2012 Order, pursuant to Pa.R.Crim.Pro. §902(E)(1), the Court has discretion to permit discovery in post-conviction matters only upon a showing of "exceptional circumstances." He has failed to show exceptional circumstances. We note that the Defendant failed to raise the issue of his restrictions while in the RHU and/or in his inability to file proper Motions and/or Petitions in his July 3, 2008 appeal to the Superior Court and only raised this issue in a *pro se* Motion for Withdraw , received by this Court on August 23, 2010. The

Defendant has failed to disclose what, if any, post-sentence motions *would have been* filed but for the conditions in the prison immediately following his guilty plea and sentencing. Therefore, we believe that granting PCRA discovery would amount to an excuse for engaging in a "fishing expedition," and this Court will not condone such tactics. Because the Defendant has failed to show exceptional circumstances as to why he is entitled to PCRA discovery and has failed to demonstrate any prejudice the denial of the Motion for Discovery has caused, we believe that the Court was justified in denying the Motion for Discovery.

## CONCLUSION

For all of the foregoing reasons, this Court does not find that either Attorney Schiesser or Attorney Parlow rendered ineffective assistance of counsel. Further, we do not believe that PCRA Discovery was warranted in this case and that we were correct in denying such a request. Therefore, we **DENY** and **DISMISS** the *pro se* PCRA Petition.

By the Court:

Kelly L. Banach,                    J.

26